UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EVELINE GOINS

v.  CASE NO. 3:02CV 1069 (MRK)

JBC & ASSOCIATES, P.C.
JACK H. BOYAJIAN  March 1, 2004
MARVIN BRANDON

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

Defendants' Opposition (1) concedes the four violations; and (2) reveals two more violations. Defendants attempt to raise factual questions, but they contradict their prior sworn responses to discovery, relate to collection efforts outside the statute of limitations, or are entirely unsubstantiated by admissible evidence.

Preliminarily, whether plaintiff wrote any of the checks is irrelevant to the substance of the motion for summary judgment, and to the applicability of the FDCPA. Keele v. Wexler, 149 F.3d 589, 595-96 (7th Cir. 1998) (declining to adopt a fraud exception to the FDCPA). Her purported failure to dispute or respond to JBC also has no factual or legal significance. 15 U.S.C.§§1692g(c).  Also,  Plaintiff's argument does not depend on any prior letters; they have no bearing on the text of the letter at issue, even if their existence and contents could be substantiated by admissible evidence other than by bald assertions of counsel. Def. Mem. at 5.

Erroneous calculation. Defendants admit that, viewing the letter as sent only on behalf of Wilson Suede, as the letter itself asserted, the amount demanded was excessive. They were constrained to reveal that there were two other undisclosed 1996 checks to Bob's necessary to make the figures add up to the amount demanded.

Even including the two unmentioned checks, the sum demanded is unlawful.

| 243.79 | 158.99 | 178,95 | 354.17 | face of 1996 checks | |
|---|---|---|---|---|---|
| 25.00 | 25.00 | 25.00 | 25.00 | Service fee § 52-565a(i) | |
| 243.79 | 158.99 | 178.95 | 354.17 | statutory damages | Total $1971.80 |

The Service Fee is limited by Connecticut statute to "up to" $20. It applies to checks written after the 1997 effective date of §52-565a(i). Defendant's overcharge was at least $25 per 1996 check, demanded in violation of 15 U.S.C. §§1692f(1).

More reprehensible is the defendant lawyers' demand for statutory dishonored check damages, which "shall be in an amount to be determined by the court in light of the circumstances, but in no even shall such amount be greater than the face amount of the check or four hundred dollars, whichever is less."§52-565a(c). Lawyers should know that they could not unilaterally demand any statutory penalty without having the amount first determined "by the court" – a provision undoubtedly enacted to prevent such oppression and significant monetary overreaching as these defendants engaged in. Def. Mem. at 4. <u>Veach v Sheeks</u>, 316 F.3d 690, 693 (7th Cir. 2003) (amount of debt misrepresented because consumer could not be liable for any amount until determined by court); <u>Picht v. Jon R. Hawks, Ltd.</u>, 236 F.3d 446, 448 (8th Cir. 2001) (dishonored check statute requires a judicial determination of any penalty, "up to" a statutory amount); <u>People ex rel. Daley v. Datacom Systems</u>, 585 N.E.2d 51, 68 (Ill. 1991) (extrajudicial demand for an amount between statutory minimum and maximum penalty unlawful); <u>Intern. Bur. of Fraud Control v. Clayton</u>, 544 N.E. 2d 416, 421-22 (Ill. App. 1989) (civil damages liability for NSF checks arises only after litigation).

<u>Criminal proceedings.</u> Defendants have not interposed any legal or factual opposition to summary judgment on the basis of their misleading and oppressive reference to criminal proceedings. Def. Mem. at 9. The letter says, "We reserve the right to use any and all

2

information we **have** obtained in **further** civil or criminal proceedings." In Connecticut, criminal proceeding must be brought by a prosecutor within the statute of limitations Private individuals, whether creditor or collection agency, have no power to proceed criminally. Here, the checks were well beyond the criminal statute of limitations. Moreover, it was factually and legally impossible for defendants themselves to proceed criminally. They don't even purport to have the checks, or copies thereof, essential to any prosecution. Yet the least sophisticated consumer was meant to conclude that criminal proceedings by were possible. Once again, defendants offer no admissible evidence of any ability or intent to use any information in criminal proceedings.

Since at least 1988, the mention of criminal proceedings has been known to violate the FDCPA. The Federal Trade Commission Official Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 60106 (Dec. 13, 1988):

> Section 807(5) prohibits the ''threat to take any action that cannot legally be taken or that is not intended to be taken.''
> . . .
> 4. Threat of criminal action. A debt collector may not threaten to report a dishonored check or other fact to the police, unless he actually intends to take this action.
> . . .
> 6. Threat of legal or other action. Section 807(5) refers not only to a false threat of legal action, but also a false threat by a debt collector that he will report a debt to a credit bureau, assess a collection fee, or undertake any other action if the debt is not paid. A debt collector may also not misrepresent the imminence of such action.
> A debt collector's implication, as well as a direct statement, of planned legal action may be an unlawful deception. For example, reference to an attorney or to legal proceedings may mislead the debtor as to the likelihood or imminence of legal action.
> 7. Illegality of threatened act. A debt collector may not threaten that he will illegally contact an employer, or other third party, or take some other ''action that cannot legally be taken'' (such as advising the creditor to sue where such advice would violate state rules governing the unauthorized practice of law). If state law forbids a debt collector from suing in his own name (or from doing so without first obtaining a formalassign ment and that has not been done), the debt collector may not represent that he will sue in that state.

Civil Proceedings.  Def. Mem. at 10. Once again, defendants have not provided any admissible evidence of an intent, ability, or authorization, to pursue civil proceedings. They have not pursued civil proceedings to this date. Under the FTC Official Staff Commentary cited above, defendants (lawyers and a law firm) have known such a threat was unlawful since at least 1988. Defendants themselves *could* not bring civil proceedings, since they did not own the account and had no standing. "We" cannot reserve any "right" we do not have. Rosa v. Gaynor, 784 F. Supp. 1, 5 (D. Conn. 1989) (the only possible construction of "we" is the defendant and others).

Motor Vehicle Information. Defendants' Mem. at 13-14 offers only a speculative statutory analysis without evidentiary support. The "least sophisticated consumer" is not expected to engage in arcane analysis of what the words might mean, rather than what they convey. The "least sophisticated consumer" is a naive, credulous, gullible, ignorant, unthinking, person of "below-average sophistication or intelligence" "with a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993). A letter is deceptive or misleading if it is subject to an inaccurate yet reasonable interpretation by the least sophisticated consumer. Russell v. Equifax A.R.S., 74 F.3d 30, 36 (2d Cir. 1996).

First newly admitted violation.  The letter at issue asked that plaintiff "voluntarily make restitution for the above referenced 'returned' check(s) you wrote to our client(s)." While the letter at issue names, and on its face purports to be on behalf of, only Wilson Suede, defendants now claim that the letter also concerned two Bob's Stores checks. Def. Mem. at 3. They thereby admit that the letter was deceptive since it mentioned only one creditor and did

4

not disclose material information that the amount demanded was also on behalf of another entity. Omission of a material fact is misrepresentation under common law (Restatement of Torts (Second)§529, 551) and deception under the Federal Trade Commission Act of 1934. Ingham v. Eastern Air Lines, Inc., 373 F.2d 227, 239 (2d Cir. 1967); Bailey Employment System, Inc. v. Hahn, 545 F. Supp. 62, 67 (D. Conn. 1982), aff'd, 723 F.2d 895 (2d Cir. 1983). The least sophisticated consumer could not tell from the face of the letter that it also referred to checks written to an entity other than the one named. Plaintiff could not exercise her statutory right under§1692h without such information.

Second newly admitted violation. The letter at issue asked that plaintiff "voluntarily make restitution for the above referenced 'returned' check(s) you wrote to our client(s)." However, the sum demanded was not for "restitution," as represented. Instead, the unitemized dollar figure included the face amount of four checks, an illegal $25 fee for each of the checks, and the statutory penalty for each check, which could be imposed only by a court. The defendants misrepresented the "character, amount or legal status of the debt" in violation of 15 U.S.C.§§1692e(2) and affirmatively concealed that defendants were attempting to collect unauthorized amounts.§1692f(1).

Ascertainable loss. Defendants' Mem. at 14 confuses the concept of actual damages with the separate statutory provision regarding ascertainable loss. Even absent actual damages, plaintiff is entitled to the injunctive and punitive relief she seeks. Under CUTPA, there is no need to allege or prove any amount of an ascertainable loss. Hinchliffe v. American Motors Corp., 184 Conn. 607, 612-14, 440 A.2d 810 (1981). "Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property." Id. at 614. "Adoption of the defendants' view, that ascertainable loss is equivalent to actual damages,

would eviscerate the private remedy provided by CUTPA." *Id*. at 616. "The private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute." Weigel v. Ron Tonkin Chevrolet Co., 690 P.2d 488, 494 (Or. 1984) (citing Hinchliffe). Defendants' theory that ascertainable loss necessitates a monetary payment is untenable. Aurigemma v. Arco Petroleum Products Co., 734 F. Supp. 1025, 1028 (D. Conn. 1990) (court refuses to address "ascertainable loss" because CUTPA does "not require a plaintiff to prove a specific amount of actual damages to make out a prima facie case").

"Ascertainable loss" is a term of art which entitles a plaintiff to bring an action. Once an action is brought, the plaintiff may seek actual damages, or -- if there are no actual damages -- equitable relief.

Section 42-110g provides:

(a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages. . . . The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper.
. . . .

(d) In any action brought by a person [the court may award attorney's fees]. . . . In any action brought under this section, the court may, in its discretion, order, in addition to damages or in lieu of damages, injunctive or other equitable relief.

Being accused of owing a debt which one does not owe is ascertainable loss. Cox v. Sears, Roebuck & Co., 647 A.2d 454, 464 (N.J. 1994); Sorge v. Transworld Systems, Inc., Civil No. 3:94CV71 (JBA) (D. Conn. Sept. 19, 1996); Rizeck v. Connecticut Coast Fitness Centers Inc., 7 Conn. Ops. 469, 471 (Apr. 30, 2001) (rejecting the need to prove actual damages). "It is enough if the consumer received something different from what had been

6

bargained for. [citing Hinchliffe v. American Motors Corp., 184 Conn. 607, 612 (1981)]. Depriving a consumer of information required to be provided by law, or giving a consumer deceptive or misleading information causes "ascertainable loss." Denino v. Valenti, 1993 Conn. Super. LEXIS 2686, 1991 CaseBase 8193 (1993). Collecting a debt through deception or unfair means also causes "ascertainable loss." Halloran v. Spillane's Servicenter, Inc., 41 Conn. Supp., 587 A.2d 176, 181 (1990).

Plaintiff has ascertainable loss when she got a letter that violated state and federal laws. She has a cause of action, even if she recovers only $1.00 in nominal damages. Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 499 (1995).  Her monetary loss, to be ascertainable, may be as little as a 33¢ stamp, a toll call, or gas or parking to visit an attorney. Wiginton v. Pacific Credit Corp., 634 P.2d 111 (Hawaii 1981); Shubach v. Household Finance Corp., 376 N.E.2d 140, 141 (Mass. 1979) (toll calls and travel to meet with counsel). St. Paul Fire & Marine Ins. Co. v. Updegrave, 656 P.2d 1130, 1134 (Wash. Ct. App. 1983) (consumer's damages "include the consumer's inconvenience, financial considerations such as loss of time in helping prepare the case").

Plaintiff bases her claim for punitive damages on the fact that defendants, attorneys and a law firm, have intentionally persisted for many years in collecting in Connecticut without a collection agency license (despite representing that they are licensed in every state); sent the unrepresented plaintiff a form letter which seriously misrepresented Connecticut law and the consequences of writing a dishonored check; intentionally abused their status as attorneys to create (unfounded) fear of civil or criminal litigation in the recipients of the form letter; sent their intimidating "attorney" form letter without so much as receiving or reviewing any check or the creditors' practices as a basis for forming an opinion about how to manage plaintiff's

7

case; and routinely imposed charges not permitted by law in their form letters.  No "attorney" should be involved in sending such deceptive form letters to unrepresented consumers. Any lawyer familiar with the FDCPA, as these defendants are required to be, knows that such tactics have been held to violate the FDCPA since at least 1988. The law cannot be so interpreted as to be helpless to deter their longstanding and persistent abuses.

    There are no disputed factual issues.  Two principles are applicable here. First, a party cannot create an issue of fact by contradicting earlier sworn testimony. Wilson v. Westinghouse Elec. Corp., 838 F.2d 286, 289 (8th Cir. 1988); Martin v. Merrell Dow Pharmaceuticals, Inc., 851 F.2d 703, 706 (3d Cir. 1985). As the Second Circuit said in Perma Research and Dev. Co. v. Singer Co., 410 F.2d 572 (2d Cir. 1969), to allow a party to raise an issue of fact contradicting his own prior testimony "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Id. at 578.  Thus, defendant's Rule 56 Statement denying Paragraph 13, contradicting their earlier sworn discovery response, does not create an issue of fact.  The balance of Defendants' Rule 56 Statement is not supported by either admissible testimony or documents and is thus ineffectual to oppose summary judgment. D. Conn. Local Civ. Rule 56(a)3.

    Second, the recital of facts at Def. Mem.3-4 has no evidentiary support. Assertions in legal memoranda are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist.  See Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980); British Airways Board v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978), cited with approval in Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994). Hearsay assertions quoted in the memorandum, such as the ownership of Wilson's and other similar remarks of Boyajian, are likewise inadmissible.

The Court is respectfully requested to disregard any unsubstantiated facts asserted in the defendants' memorandum; nor need it search the deposition for support since most of the deposition pages do not appear to support the assertions in the memorandum.

CONCLUSION

Plaintiff has presented six serious violations of which the individual defendants, whose principal practice with JBC is debt collection, and who are admitted as lawyers in other jurisdictions, are charged with knowledge.   To quote the Seventh Circuit, "The violations of the Fair Debt Collection Practices Act disclosed by this record are blatant, and reflect very poorly upon attorney Lawent's professionalism." <u>Shula v. Lawent,</u> No. 03-3194 (7th Cir. February 26, 2004).

Partial summary judgment as to liability alone, including liability for punitive damages, should enter for plaintiff for these violations of the FDCPA and state law.

THE PLAINTIFF

BY__/s/ Joanne S. Faulkner___
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511
(203) 772-0395

This is to certify that the foregoing was mailed on February 28, 2004, postage prepaid, to:

Sabatino Fiano
Jonathan D. Elliot
P. O. Box 763
Southport CT 06490

__/s/ Joanne S. Faulkner__
Joanne S. Faulkner