UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
Aug 30   2 11 PM '04
U.S. DISTRICT COURT
NEW HAVEN, CONN.

EVELINE GOINS

v.   CASE NO. 3:02CV 1069 (MRK)

JBC & ASSOCIATES, P.C.
JACK H. BOYAJIAN            August 28, 2004
MARVIN BRANDON

<u>PLAINTIFF'S REPLY TO SUPPLEMENTAL SUBMISSION</u>

Plaintiff submits this Reply to defendants' Supplemental Submission (Doc. No. 50) as permitted by the Court. The Court gave defendants the opportunity to put forward admissible evidence that defendants had plaintiff's driver's license number on the Wilson account. Defendants have not done so. The Court gave defendants the opportunity to provide admissible evidence as to when earlier letters were sent and what they said. Defendants have not done so.

<u>Driver's license.</u> One of plaintiff's claims was that the letter sent to her was deceptive or misleading in that it implied that the mere use of her driver's license was sufficient to show her consent to defendant's contacting the Department of Motor Vehicles, contrary to the law requiring express consent (and irrespective of whether defendants had some other undisclosed basis for contacting the DMV). The Court noticed a possible additional deception: whether defendant's records as of November, 2001, indeed reflected that plaintiff "may have used your drivers licensed," as the letter stated. Defendants have already conceded that they never had copies of the checks. Plaintiff's Local Rule 56(a)1 Statement ¶ 16.

Defendants' response did not disclose whether their 2001 records reflected a driver's license for the Wilson account. Instead, defendant Boyajian submitted a declaration (including inadmissible argument) attaching an August 2004 "sample screen print" showing a D/L

2128895428 and showing the same number in the upper right as a Social Security Number. (SS#). The document was created sometime after 6/11/04 (see mid-left hand column), and was never produced in discovery.

1. Because the "sample screen print" was created for this litigation, the document is inadmissible. <u>Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.</u>, 38 F.3d 627, 632-33 (2d Cir. 1994); <u>United States v. Blackburn</u>, 992 F.2d 666, 670 (7th Cir. 1993); <u>Palmer v. Hoffman</u>, 318 U.S. 109, 113-14 (1943).

2. Because the "sample screen print" was never produced in discovery, the document should not be admitted. Fed. R. Civ. p. 37(c)(1).

3. Defendants' own Deposition Exhibit G, a September 18, 2002, Fact Sheet for the Wilson account, does not have the Driver's License number. Attachment to Fiano Affidavit submitted with Defendants' Local Rule 56(a)(2) Statement.

4. Because the check attached to the Boyajian declaration is not a Wilson check, it is not probative of what the Wilson check looked like.

5. The Wilson letter itself does not include the License Number, raising a presumption that defendants did not have the license number for plaintiff to verify. See attached JBC letter which does include a license number.

6. Plaintiff appends yet another fact sheet, produced at Boyajian's July 2004, deposition in another case, showing the number as SS# and showing no driver's license number.

7. The number is not, in fact, plaintiff's Driver's License number. Excerpt from Goins Deposition attached. (The number is not Ms. Goins' SS# either, as the questioner already knew based on the public record of plaintiff's bankruptcy filing.)

2

<u>Earlier letters.</u> Defendants did not raise any factual issue, in their Local Rule 56(a)(2) Statement, about any prior letters having been sent. Their Opposition Memorandum claimed it was the third letter. They have produced no record of sending any prior letters. They have no record of whether any letters were returned by the Postal Service. They cannot recreate or reproduce what records they had before the 2001 transition to the new system. Yet, the Boyajian declaration ¶ 5 claims that "numerous letters have been written during the period of 1997, 1998, 1999, [no 2000] 2001."

At page 91 of the Boyajian Deposition relied on by defendants, Mr. Boyajian admits that whatever was on the pre-2001 GWA system was not maintained. At pages 28-29 of his July 2004 deposition, Mr. Boyajian said he could not even retrieve records from before the June 2002 merger of all the check files into one.

```
13         Q     Okay.  Well, let me tell you that
14    June 24th [2002] is the day you received the first lawsuit.
15         A     Okay.

16         Q     So that is why I think status, change
17    status, is to 31 rather than from 31.
18         A     Yeah.  See, what happens, though, you
19    see there's a merge from 765937 and a merge from
20    A26044.  Those two merges -- I don't know what
21    happens when it merges, yet.  I still haven't
22    figured it out.  But I do know what -- I don't know
23    exactly the whole full sequence of what happens
24    internally on the system, but I do know that when
25    merges occur, notations on either the merged or the
0028
 1    master are either, are somehow, they disappear.
 2                So I'm not sure if the master
 3    transactions are retained and the merged, the one
 4    that gets merged into the master loses its
 5    transactions or if it's vice versa. . . .
10                So I guess it's the merged ones that
17    delete.  But what could have happened is that the
18    status code of the merged could become that of the
19    master.  And that may explain how it was 31 and
20    became 49, because those other merged documents
21    could have become 31 and their, their transaction
22    codes are lost, so we don't know when they were
23    actually transferred to 31.
24         Q     Do you still have the master files
```

```
25   from which -- the merger?
0029
 1         A      I wish I did.  No.  I can't retrieve
 2   them.  That's one of the problems.  What we're now
 3   doing is after we found out this real deficiency and
 4   realized that we -- I think we brought CRS on at the
 5   beginning of '02 or late '01, so we just became more
 6   and more aware of these deficiencies as these
 7   situations arose.  I think now we're retaining the
 8   transaction codes as auxilliary pages, not
 9   necessarily in the same place as this, but now we
10   can go and take a look what happened.  We can't do
11   that in this case.
```

Mr. Boyajian's Declaration is sheer guesswork as to the contents of the supposed letters and the speculation that "numerous letters" were sent and none were returned.

<u>Declaration inadmissible.</u> The unsworn Declaration does not provide admissible evidence for two reasons. First, it does not substantially comply in form with 28 U.S.C. § 1746 which allows an unsworn declaration. See <u>Pollock v. Pollock,</u> 154 F. 3d 601, 612, n.20 (6th Cir. 1998). Second, it is made "to the best of my knowledge and belief." That is insufficient to create admissible evidence. <u>Lopez-Carrasquillo v. Rubianes</u>, 230 F.3d 409, 414 (1st Cir. 2000); <u>Chandler v. Coughlin</u>, 763 F.2d 110 (2d Cir 1985) ("information and belief").

## CONCLUSION

Defendants have not provided admissible evidence of having plaintiff's Driver's License number as to the checks at issue in this case. The elusive account records merely show that someone's license / SS# number might have merged into the August 2004 printout from some other check after this lawsuit was brought and after discovery herein was completed.

Defendants have no record of sending letters prior to November 2001. Their claim that prior letters would have cleared up the deception caused by the "Wilson" heading on a letter which also demanded repayment for undisclosed Bob's checks is without evidentiary foundation.

4

THE PLAINTIFF

BY *[signature]*
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395
j.faulkner@snet.net

This is to certify that the foregoing *and ablated* was mailed on August 28, 2004, postage prepaid, to:

Jonathan D. Elliot
P. O. Box 763
Southport CT 06490

*[signature]*
Joanne S. Faulkner

**JBC & ASSOCIATES, INC.**
33 Wood Avenue South Suite 701
Iselin, NJ 08830

(732) 744-1111                    (800) 655-9107                    Fax: (732) 744-1112

Marv Brandon
*Attorney at Law*

November 22, 2000

Hel          ioore
170 M      eld St.
New Haven, CT 06511
|||....|...|.|...||...||...||

RE:  Toys 'R' Us                             File #:  450-001706319
DRIVERS LICENSE #:  157058367

Dear Hele        noore:

You have obviously chosen to ignore our previous communication demanding that you make restitution on an NSF check(s) written to our above-referenced client(s). Our client(s) may now assume that you delivered the check(s) with intent to defraud, and may proceed with the allowable remedies.

Since you have not tendered payment for the full amount of the check(s) and service charge(s) within the 30 days provided, pursuant to Connecticut General Statutes Section 52-565a, you will be subject to statutory penalties as determined by the court, but in no event shall such amount be greater than the face value of the check or $400.00, whichever is less, for a total amount of $ 274.60.

You may wish to settle this matter before we seek appropriate relief before a court of proper jurisdiction by a qualified attorney by contacting **L. Brown at 800-655-9107.**

Very truly yours,

Marv Brandon, Esq.

This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose.

# FACT SHEET

PLAINTIFF'S EXHIBIT
Boyajian - W
7/6/04

```
CRS #:       562183                          Client #:    WSU    -1
Name:        GOINS, EVELINE J                WILSON SUEDE & LEATHER
Address:     45 3RD ST APT                   Acct #:      4948180-297
City/State:  NEW HAVEN, CT 06519             Regarding:
Phone #1:    (000) 000-0000                  Amt Refered:     243.79
Phone #2:    (0  )    -                      Current Bal:     243.79
Soc Sec No:  212-89 5428                     Comm Rate:        50.000%
Contact:                                     Costs:             0.00
                                             Ck Chg/Fee:       25.00
                                             Penalty 243.79
Status:      42   CLSD PER JBC               Interest Rate:     0.000%
Coll Unit:   999  CLOSED ACCOUNTS            Interest Amt:      0.00
Date Last:   05/24/01                        Date Received: 09/25/97
Activity Code:  NU NOT USED                       ****** RETURNED ******

SSN

Prev GWA ID   01-0349
Old GWA Stgy  225
```

===============================================================================

===============================================================================

```
-----------PAYMENTS----------------    -------------TRANSACTIONS--------------
--Date--      Amount    Code   Rate    --DATE--    TIME   AC/RC   ----COMMENT----  ID

09/25/97       0.00      97            07/10/01   07:40   TA/349                   PWW
                                       08/02/01   15:01   PS/NI                    SYS
                                       11/21/01   15:53   SN/3                     ROO
                                       11/23/01   07:39   DT/GI   A1-45 THIRD ST   SYS
                                       11/23/01   07:39   DT/GI   ADDRESS 2        SYS
                                       11/23/01   07:39   DT/GI   HP-0             SYS
                                       11/23/01   07:39   DT/GI                    SYS
                                       11/26/01   18:07   TR/RP                    618
                                       11/26/01   18:07   CC/CC                    618
                                          DBTR REFUSING TO PAY        618
                                       01/16/02   22:41   TA/749                   DMP
                                       05/30/02   14:47   TA/450                   ROO
                                       06/05/02   20:28   TR/DA                    DLR
                                       06/06/02   19:39   TR/DA                    DLR
                                       06/08/02   14:17   TR/DA                    DLR
                                       06/09/02   16:51   TR/DA                    DLR
                                       06/11/02   19:34   TR/DA                    DLR
                                       06/12/02   19:00   TR/DA                    DLR
                                       06/15/02   08:46   TR/DA                    DLR
                                       06/18/02   12:52   TA/450                   ROO
                                       06/18/02   18:13   TR/DA                    DLR
```

37

1        You testified previously that prior to the
2   letter marked Defendant's Exhibit 1 you had received
3   at least two prior letters from JBC & Associates,
4   correct?
5        A.   Yes.
6        Q.   Were you including Defendant's Exhibit 2,
7   in your mind, as a letter you had previously
8   received from JBC & Associates prior to receiving
9   Defendant's Exhibit 1?
10       A.   Yes.
11       Q.   And it's your testimony that there was at
12  least one other letter other than Defendant's
13  Exhibit 2 that you received prior to receiving
14  Defendant's Exhibit 1, correct?
15       A.   Yes.
16       Q.   But just so I'm clear, you testified
17  earlier it might have been more than two letters
18  that you received before Defendant's Exhibit 1,
19  correct?
20       A.   Yes.
21       Q.   Ms. Goins, is your driver's license number
22  212895428?
23       A.   No, it's not.
24       Q.   Do you have your driver's license here
25  with you today?

**CONDENSED**

```
 1                    UNITED STATES DISTRICT COURT
 2                    THE DISTRICT OF CONNECTICUT
 3                    CASE NO. 3:03CV636 (JBA)
 4                                        :
 5   EVELINE GOINS,                       :
                                          :
 6                                        :
              Plaintiff,                  :
 7                                        :
         v.                               :
 8                                        :
     JBC & ASSOCIATES, P.C., et al,       :
 9                                        :
                                          :
10            Defendant,                  :
                                          :
11   _____/
12
13           DEPOSITION OF JACK H. BOYAJIAN, ESQ.
14                   TUESDAY, JULY 14, 2004
15
16
17
18
19
20
             COMPUTER-AIDED TRANSCRIPT PREPARED BY:
21
         FITZSIMMONS REPORTING & VIDEOCONFERENCE CENTER
22
                   570 West Mt. Pleasant Avenue
23
                   Livingston, New Jersey 07039
24
            Phone (973) 994-3510 Fax (973) 994 3621
25
```

JACK H. BOYAJIAN, ESQ.

8 (Pages 26 to 29)

### Page 26

1    A    Yes.
2    Q    And on June 24, Mr. Brandon changed
3    the status to Status 31?
4    A    No, that's a from.
5    Q    Why was it in Status 31 before being
6    transferred?
7    A    I don't know. I can't tell from this
8    report. Is there another one that was merged,
9    because these notations, these transaction notations
10   are absolutely useless.
11   Q    I think Exhibit G is the earlier one.
12   A    What does this say?
13   Q    It's printed at a different date.
14   That's why I say --
15   A    Right.
16   Q    -- it's an earlier one.
17   A    Right. Oh, okay, September 18. See,
18   this is what I -- see, that's why I was referring to
19   it. I know that as of that date the status code was
20   49. So what that would suggest to me is that when
21   he changed it on 6/24, if it was Mr. Brandon, it was
22   31. It now became the current 49.
23        So the 31 is always going to reflect,
24   the numbers following the CS are going to reflect
25   the status code that it was before it was changed to

### Page 27

1    the current.
2    Q    Would he have changed it to 31 and
3    then to 49?
4    A    No. That would not be -- I mean, it
5    must have been 31 at some point. I just don't see
6    where it happened. These transactions may have not
7    reflected exactly what happened when it happened.
8        I can't imagine 31 was placed on there
9    other than prior to the date that he changed it from
10   31 to 49. I just don't know when. There's no
11   indication in this transaction as to when it
12   happened.
13   Q    Okay. Well, let me tell you that
14   June 24th is the day you received the first lawsuit.
15   A    Okay.
16   Q    So that is why I think status, change
17   status, is to 31 rather than from 31.
18   A    Yeah. See, what happens, though, you
19   see there's a merge from 765937 and a merge from
20   A26044. Those two merges -- I don't know what
21   happens when it merges, yet. I still haven't
22   figured it out. But I do know what -- I don't know
23   exactly the whole full sequence of what happens
24   internally on the system, but I do know that when
25   merges occur, notations on either the merged or the

### Page 28

1    master are either, are somehow, they disappear.
2        So I'm not sure if the master
3    transactions are retained and the merged, the one
4    that gets merged into the master loses its
5    transactions or if it's vice versa. I know this --
6    the theory that CRS gave me is that if you merge the
7    transactions as well, you're going to be out of
8    sequence in the date range, because these are not,
9    they can't be resorted sequentially.
10       So what happens is if -- their
11   argument is, if they merge two documents and the
12   master has dates that are similar in transaction
13   dates than the one that's being merged, then you're
14   going to be out of sequence if you follow it, and if
15   you -- and you can't integrate it. So that's their
16   argument. So I guess it's the merged ones that
17   delete. But what could have happened is that the
18   status code of the merged could become that of the
19   master. And that may explain how it was 31 and
20   became 49, because those other merged documents
21   could have become 31 and their, their transaction
22   codes are lost, so we don't know when they were
23   actually transferred to 31.
24   Q    Do you still have the master files
25   from which -- the merger?

### Page 29

1    A    I wish I did. No, I can't retrieve
2    them. That's one of the problems. What we're now
3    doing is after we found out this real deficiency and
4    realized that we -- I think we brought CRS on at the
5    beginning of '02 or late '01, so we just became more
6    and more aware of these deficiencies as these
7    situations arose. I think now we're retaining the
8    transaction codes as auxilliary pages, not
9    necessarily in the same place as this, but now we
10   can go and take a look what happened. We can't do
11   that in this case.
12   Q    Exhibit G I guess reflects what would
13   come up on a collector's screen if someone called in
14   to inquire about this account?
15   A    Some of the information is what comes
16   up on the screen. Typically, the top portion is
17   what comes up.
18   Q    There's a status code 49 on Exhibit G,
19   which means closed per attorney.
20   A    Yes.
21   Q    Can there be more than one status code
22   there?
23   A    No.
24   Q    So that if there was a bankruptcy,
25   which code would supersede?