UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EVELINE GOINS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 3:02CV1069 (MRK) |
| | : | |
| JBC & ASSOCIATES, P.C. | : | |
| JACK H. BOYAJIAN, | : | |
| MARVIN BRANDON | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF DECISION**

In this case, Plaintiff, Eveline Goins, sued JBC & Associates, P.C., Jack H. Boyajian, and Marvin Brandon (collectively, "the Defendants") for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, as well as alleged attendant violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a.  *See* Complaint [doc. #1].  Presently before the Court is Plaintiffs' Motion for Partial Summary Judgment as to liability under FDCPA and CUTPA [doc. #32].  For the reasons stated below, the Motion for Partial Summary Judgement is GRANTED IN PART and DENIED IN PART.

**I. Factual Background**

The pertinent facts are drawn from the parties' pleadings submitted in connection with the pending motion.[1]  Unless otherwise indicated, the facts are undisputed.  Eveline Goins is a

---

[1] The submissions consist of: Plaintiff's Memorandum in Support of Summary Judgement [doc. #33] ("Pls. Mem. of Law."); Plaintiff's Local Rule 56(a)1 Statement [doc. #34] ("Pls.' 56(a)1 Statement"); Defendants's Affidavit in Opposition of Summary Judgement [doc. #44] ("Defs.' Aff."); Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgement [doc. #45] ("Defs.' Mem. of Law."); Defendants' Local Rule 56(a)2

consumer within the meaning of the FDCPA. Pls.' 56(a)1 Statement ¶1. Defendants JBC & Associates, P.C. ("JBC") and Marvin Brandon are debt collectors within the meaning of the FDCPA. Pls. 56(a)1 Statement ¶ 2,3. Defendant Jack Boyajian is the president, CEO, and principal of defendant JBC. Pls.' 56(a)1 Statement ¶ 8. Ms. Goins allegedly owed a debt to Wilson Suede & Leather. Defendants JBC and Brandon sent Ms. Goins a demand letter on JBC's letterhead dated Nov. 22, 2001 attempting to collect this debt. Pls.' 56(a)1 Statement ¶ 6. The total face value of the two checks Ms. Goins allegedly wrote to Wilson Suede & Leather was

---

Statement [doc.# 46] ("Defs.' 56(a)2 Statement"); Plaintiff's Reply Memorandum in Support of Summary Judgement [doc. #47] ("Pls.' Reply"); Defendants' Supplemental Submission in Opposition to Plaintiff's Motion for Partial Summary Judgement [doc. #50] ("Defs.' Supp. Sub."); Declaration of Jack H. Boyajian [doc. #51] ("Decl. of Boyajian"); Plaintiff's Reply to Supplemental Submission [doc. #52] ("Pls.' Reply to Supp. Sub.").

     In their Rule 56(a)2 Statement, Defendants began with paragraph 12 and did not specifically respond to paragraphs 1 through 11 in Plaintiff's Local Rule 56(a)1 Statement. Local Rule 56(a)2 states that:

> [T]he papers opposing a motion for summary judgement shall include a document entitled 'Local Rule 56(a)2 Statement' which states in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied.

Since "all material facts set forth in [the movant's Rule 56(a)1 Statement] will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)(2)," D. Conn. L. Civ. R. 56(a)(1), all of the Plaintiff's factual assertions in their Rule 56(a)(1) Statement that were not specifically denied in Defendants' Rule 56(a)2 Statement will be deemed admitted for the purposes of this motion. *See S.E.C. v. Global Telecom Serv., L.L.C.*, No. 3:03 CV 418 (PCD), 2004 WL 1638045, at *7 (D. Conn. July 19, 2004).

$402.78. Pls.' 56(a)1 Statement ¶13; Defs.' 56(a)2 Statement ¶13.

The November 2001 demand letter is the focus of this lawsuit and its contents were as follows:

> Re: Wilson Suede & Leather
> File: 562183
> Balance: $1971.80
>
> Dear Eveline J Goins:
>
> It is unfortunate that you have refused our offer to voluntarily make restitution for the above-referred "returned" check(s) you wrote to our client(s).
>
> We see no reason or excuse why you would avoid responding to our attempts to contact you. If you don't believe that you wrote the bad check(s) in question, and this is a matter of fraud or a case of mistaken identity, you must provide us with a copy of the police report obtained from your local authorities and an affidavit of forgery from your bank. Otherwise, we will assume that the obligation is valid and all information obtained at the point of check issuance is accurate.
>
> Be advised that our records reflect you may have used your drivers license and therefore you may have authorized our client to inquire as to your identity and location in its efforts to recover the funds due. Before your state's motor vehicle division is contacted regarding such information, we would like to confirm the following:
> 1. The drivers license number (if any) associated with the check is accurate; and
> 2. You personally used your license when issuing the dishonored check.
>
> **Please note the information we have establishes that a person using your name, address and/or drivers license obtained merchandise, presumably with fraudulent intent, by issuing a bad check(s) to our client(s).**
>
> Unless we receive immediate payment of $1971.80 or sufficient documentation that relieves you of this obligation, we reserve the right to use any and all information we have obtained in further civil or criminal proceedings.
>
> If you need further instructions, you may contact: **Lori Brown Skp at 800-655-9107.**

3

>Be guided accordingly.

*See* Exhibits attached to doc. #34 (emphasis in original). The letter is signed by Mr. Brandon and the following statement appeared below his name: "This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose." *Id*.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A genuine issue of fact exists when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome if the substantive law renders them so. *Andersen v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, the party opposing summary judgment "may not rest upon mere allegations or denials," rather the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court must draw all ambiguities and inferences in favor of the plaintiffs. *See Andersen*, 477 U.S. at 255. However, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Andersen,* 477 U.S. at 249-50.

### III.  FDCPA Claims

The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e.  Claims under the FDCPA are evaluated under the "least sophisticated consumer" standard.  *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). This standard is designed to protect all consumers, "the gullible as well as the shrewd." *Id*.  Under this standard, "collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate." *Id*. at 1319.  Nevertheless, "the courts have carefully preserved the concept of reasonableness," and therefore "even the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id*.  Whether a particular debt collection letter is deceptive or misleading from the viewpoint of the least sophisticated consumer is ordinarily a matter of law for the court to decide. *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-63 (2d Cir. 1993).

In this case, Ms. Goins claims that the November 22, 2001 debt collection notice was misleading in a number of respects.  The court will consider Ms. Goins' claims in turn.

**Amount of the Debt.**   Viewed from the perspective of the "least sophisticated consumer" described in *Colon*, the Court concludes that Defendants' debt collection notice dated November 22, 2001 was misleading as a matter of law with respect to the amount demanded. The letter demanded payment of $1971.80, but failed to explain how this amount was calculated. Defendants' letter referred only to checks written to Wilson Suede & Leather.  *See* Exhibits attached to doc. #34.   Yet Defendants' admit that the face value of the checks written to Wilson

Suede & Leather totaled only $402.78. Defs.' Mem. of Law. at 3.

In an effort to excuse this discrepancy, Defendants' claim that the November letter should be read in conjunction with prior collection letters that allegedly mentioned additional debts arising from checks written to Bob's Stores. *Id*. These additional returned checks would increase the total debt owed by Ms. Goins to both Bob's Stores and Wilson Leather to a total of $935.90. Yet, that figure – $935.90 – is still well below the $1971.80 demanded in the November 2001 demand letter. In order to reach the $1971.80 figure used in the November 2001 demand letter, Defendants claim that in their earlier letters to Ms. Goins they added the maximum $20 service fee[2] for each of four checks as well as $935.90, which is the maximum Defendants would have been entitled to if they had prevailed in a civil lawsuit against Ms. Goins to collect on the four checks. Defendants conceded at oral argument that they would not necessarily have been entitled to the statutory damages at the maximum even if they had prevailed in any such litigation.

The Court is not at all convinced that it should consider these purported letters. First, none were ever produced by Defendants' or anyone else and Defendants' claim rests merely on what they believed would have been in prior letters. Second, Defendant's cannot say when any such letters would have been sent in relation to the November 2001 letter. If the prior letters had been sent weeks before the November letter then perhaps Defendants' argument that the Court should consider more than just the November 2001 letter would have merit. However, if the

---

[2] As Plaintiff points out in her reply memorandum, *see* Pls.' Reply at 2, the total payment requested in the November letter actually reflects a service charge of $25 per check. In Connecticut, the maximum service charge is set by statute at $20 per check. Conn. Gen. Stat. Ann. §52-565a(i).

prior letters were sent many months or even years before November of 2001, then there is no basis to suppose that the least sophisticated consumer would have read all of these letters together for purposes of interpreting the November 2001 letter. Since the Defendants who are asserting that the Court must read the November 2001 letter in conjunction with earlier letters, it is the Defendants who had the burden of producing those letters and establishing when they were sent to Ms. Goins. Yet, Defendants have utterly failed to do so.

Even if the Court did consider the alleged prior letters, the amount demanded in the November 2001 letter would still be misleading because according to Defendants, that letter included a maximum possible recovery from a civil lawsuit, an amount that had not yet been awarded by any court. "The 'amount of debt' provision is designed to inform the debtor (who remember, has a low level of sophistication) of what the *obligation* is, *not* what the final, worst-case scenario *could* be." *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003) (emphasis in original). Since Ms. Goins cannot be held liable for statutory damages until there has been a judgment by a court and it is undisputed that in November 2001, no lawsuit against Ms. Goins had even been filed, Defendants had no basis for including in the debt owed by Ms. Goins a hypothetical maximum recovery in litigation. Therefore, the November 2001 letter would have been misleading regarding the amounts demanded, even if the Court considered the letters that Defendants claim (without factual basis) were sent to Ms. Goins before the November 2001 letter.

Finally, regardless of what any prior collection letters may have stated, it is undisputed that the November 2001 letter contained none of the elaborate calculations now asserted by Defendants. Instead, the November 2001 letter referred only to the Wilson Suede & Leather

debts and it expressly sought "restitution" for an amount that did not reflect the Wilson debts. Based on the information in the November letter, the least sophisticated consumer could have been led into thinking that she owed $1971.80 on account of checks written to Wilson Suede & Leather. And it is undisputed that such an interpretation – though entirely reasonable in the circumstances – is inaccurate. Therefore, the debt collection notice is misleading with respect to the amount of the debt owed.

**Reference to Criminal Proceedings**. The Court also finds the November 2001 demand letter's reference to possible further "criminal proceedings" misleading. A reference to criminal proceedings could reasonably mislead the least sophisticated consumer into thinking that a criminal prosecution against her was a possible consequence of her failure to meet the demands in the letter. Yet in actuality, as Defendants conceded at oral argument, the statute of limitations for any criminal prosecution arising from Ms. Goins' bad checks would have expired long before the November 2001 demand letter was sent. The Court is unpersuaded by Defendants' argument that a criminal prosecution was still always possible, since a prosecutor might have decided to proceed with a criminal prosecution despite the running of the statute of limitations. If a criminal prosecution is barred by the statute of limitations, Defendants have no business threatening consumers with criminal complaints.

**Reference to Civil Proceedings**. By contrast, the Court agrees with Defendants that the reference to possible civil proceedings is not false or misleading. The parties agree that any civil action arising from the bad checks would be governed by a six (6) year statute of limitations for contract actions. Pls.' Mem. of Law. at 5; Defs.' Mem. of Law at 11. Thus, at the time that the November 2001 demand letter was sent, Defendants would have been free to institute a civil

proceeding.

**Reference to Drivers License Numbers**.    Finally, the Court will not grant Ms. Goins partial summary judgment on the basis that the November 2001 demand letter's reference to Ms. Goins' drivers license number was false or misleading.  The Court does not find that the text of the letter supports Ms. Goins' claim that the reference to her drivers license number was actually a threat to her drivers license or ability to register a motor vehicle.  Similarly, the Court finds that Defendants' attempt to confirm Ms. Goins drivers license number and whether she used her license in connection with dishonored checks is also unproblematic.   The letter does not, as Ms. Goins argued at oral argument, suggest that she had already authorized Defendants' to use her drivers license number.  The letter does suggest that Defendants' "records reflect[ed]" the fact that Ms. Goins might have used her drivers license when providing the checks in question, and that statement would be misleading or false if Defendants records contained no such information at the time the letter was sent.  The parties take diametrically opposed positions on whether the underlying facts show that Defendants' records did or did not reflect Ms. Goins' use of her drivers license.  *See* Defs.' Supp. Sub. at 1; Pls.' Rep. to Supp. Sub. at 1-2.  In view of this genuine issue of material fact as to whether Defendants had Ms. Goins' drivers license number in their files as of November 22, 2001, the Court cannot grant Ms. Goins partial summary judgment on this issue.

In summary, the Court grants Ms. Goins partial summary judgment on liability on her FDCPA claims with respect to the amount demanded in the November 2001 demand letter and its reference to criminal proceedings, and denies summary judgement with respect to the reference to civil proceedings and to the drivers license number.

## V. CUTPA Claims

In order to make out a claim under the CUTPA, a plaintiff must demonstrate that she has suffered an "ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b." Conn. Gen. Stat. Ann. § 42- 110g(a). Ms. Goins does not claim that she has suffered an ascertainable loss, but instead claims that "under CUTPA there is no need to allege or prove any amount of ascertainable loss." Pls.' Reply at 5. The Court disagrees.

The Second Circuit has expressly instructed that "[a]lthough plaintiffs are not required to prove a specific amount of actual damages to make out a *prima facie* case under the CUTPA, the ascertainable loss requirement is a 'threshold barrier' that must be satisfied in order to state a CUTPA claim." *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232, 238 (2d Cir. 1998). A plaintiff can satisfy her burden by showing that she "paid the debt, acted in reliance on the letter, suffered emotional loss or harm, or responded to the letter in any way," *id.*, none of which Ms. Goins claims she did in this case. Therefore, Ms. Goins has not satisfied her burden of proving an ascertainable loss.

Each of the cases that Ms. Goins cites to the Court involved an ascertainable loss of some kind. *See Aurigemma v. Arco Petroluem Products Co.,* 734 F. Supp. 1025, 1027-28 (D. Conn 1990) (plaintiffs asserted an ascertainable loss because defendants wrongfully terminated their franchise)*; Larsen Chesley Realty Co. v. Larsen,* 232 Conn. 480, 499, 656 A.2d 1009 (1995) (plaintiff sought real damages); *Hinchcliffe v. American Motors Corp.*, 184 Conn. 607, 619, 440 A.2d 810 (1981) (plaintiffs demonstrated ascertainable loss by showing a diminution in value of the vehicle they purchased); *Denino v. Valenti,* No. CVNH 9108-4608, 1993 WL

426040, at *9-10 (Conn. Super. Ct. Sept. 30, 1993) (plaintiff suffered ascertainable loss when he received rental premises different than what he bargained for); *Halloran v. Spillane's Servicenter, Inc.*, 41 Conn. Supp. 484, 493, 587 A.2d 176 (1990) (plaintiffs' vehicles were actually seized); *Wiginton v. Pacific Credit Corp.*, 634 P.2d 111, 118 (Haw. Ct. App. 1981) (plaintiff demonstrated loss of at least $25);*Shuhbach v. Household Finance Corp.*, 376 N.E.2d 140, 141 (Mass. 1979) (plaintiff demonstrated monetary loss);*Cox v. Sears, Roebuck & Co.*, 647 A.2d 454, 464 (N.J. 1994) (plaintiff suffered ascertainable loss due to shoddy workmanship by the defendant that required repair); *Weigel v. Ron Tonkin Chevrolet Co.,* 690 P.2d 488, 492-94 (Or. 1984) (plaintiff's loss was diminution in value of a vehicle that the dealer represented as new, when it was actually used); *St. Paul Fire & Marine Ins. Co. v. Updegrave*, 656 P.2d 1130, 1134 (Wash. Ct. App. 1983) (plaintiff demonstrated damages of at least $5000).  By contrast, the Ms. Goins does not claim that she suffered any ascertainable loss due to the Defendant's actions.  Therefore, the Court must deny Ms. Goins' request for partial summary judgment on her CUTPA claim.

### VI. Conclusion

For the foregoing reasons, Ms. Goins' Partial Motion for Summary Judgement is GRANTED IN PART and DENIED IN PART.  The parties are directed to submit to the Court a plan for trial on the remaining issues.

IT IS SO ORDERED,

                                            /s/      Mark R. Kravitz
                                                   United States District Judge

Dated at New Haven, Connecticut: September 3, 2004.