UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EVELINE GOINS

v.                                          CASE NO. 3:03CV 636 (JBA) (JGM)

JBC & ASSOCIATES, P.C.  ET AL.                          April 2, 2005

## PLAINTIFF'S FEE APPLICATION

Plaintiff applies for an award of fees against defendants in the sum of $25,221.  Plaintiff prevailed on her motion for partial summary judgment, and defendants paid $1,500 to plaintiff, more than the maximum statutory damages. Plaintiffs also intend to seek $895.19 in expenses, including filing and deposition costs.  Counsel submits a memorandum and an affidavit as to time and experience herewith.

THE PLAINTIFF

BY____/s/ Joanne S. Faulkner_____
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395

This is to certify that the foregoing was mailed on April 2, 2005, postage prepaid, to:

Peter Reynolds
MacDermid, Reynolds & Glissman, P.C.
86 Farmington Ave
Hartford CT 06105

__/s/ Joanne S. Faulkner_____
Joanne S. Faulkner

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EVELINE GOINS

v.                                    CASE NO. 3:03CV 636 (JBA) (JGM)

JBC & ASSOCIATES, P.C. ET AL.                    April 2, 2005

PLAINTIFF'S MEMORANDUM RE ATTORNEYS FEES

Plaintiff applies for an award of fees, based on the summary judgment entered herein and defendant's consequent agreement to pay more than the maximum amount of statutory damages available in this case. The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692k(a)(3), provides that a defendant who fails to comply with any of its provisions "is liable" to the plaintiff for a "reasonable attorney's fee as determined by the court." Plaintiff applies for a fee award of $25, 221 at $300 per hour for 84.07 hours, modest in this hard fought case.

In awarding fees, the Court can consider the substantial effort of plaintiff's attorney caused by defendants' "counsel who fought the case bitterly to the very end and even now continue their recalcitrant posture." Birmingham v. Sogen-Swiss Intern. Corp. Retirement Plan, 718 F.2d 515, 523 (2d Cir. 1983).

> Although private parties looking only to their own interests would not invest more in litigation than the stakes of the case, the combination of self-interest with the American Rule on the allocation of legal costs means that people can get away with small offenses. A two-day suspension may be unconstitutional, but a few hours of legal time costs more than the wages lost. Section 1988 helps to discourage petty tyranny. Awarding the full cost of litigation, which looks excessive in the single case, is sensible because it aids

in the enforcement of rules of law. [citation omitted]. Put another way: Monetary awards understate the real stakes. Judicial decisions have effects on strangers. This litigation was prosecuted by a lawyer retained by a union of public employees and stoutly resisted by the county. If as the defendants say "only" $3,700 was at stake, why the tenacious resistance? Defendants do not contend that the exertion on plaintiff's side was unreasonable in relation to the defense; no more is necessary to show that the judge acted within his discretion in awarding fees exceeding the monetary recovery.

Barrow v. Falck, 977 F.2d 1100, 1103-04 (7th Cir. 1992).

"While [defendant] is entitled to contest vigorously [plaintiff's] claim, once it does so it cannot then complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours expended." Henson v. Columbus Bank & Trust Co., 770 F.2d 1566, 1575 (11th Cir. 1985). To the same effect: Copeland v. Marshall, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc) (Title VII; contentious litigation strategy forced plaintiff to respond in kind); Loggins v. Delo, 999 F.2d 364, 368 (8th Cir. 1993) ($25,000.00 attorney's fee award for recovery of $102.50 in actual damages).

FDCPA Fee Standards

Where, as here, an attorneys fee provision is phrased in mandatory terms, "fees may be denied a successful plaintiff only in the most unusual of circumstances." De Jesus v. Banco Popular de Puerto Rico, 918 F.2d 232, 234 (1st Cir. 1990) (truth in lending). An award of fees is also mandatory in FDCPA cases. Zagorski v. Midwest Billing Services, Inc., 128 F.3d 1164 (7th Cir. 1997);

2

Tolentino v. Friedman, 46 F.3d 645, 651 (7th Cir. 1995) (George C. Pratt, C.J.);

Graziano v. Harrison, 950 F.2d 107, 113-14 (3d Cir. 1991) (FDCPA "mandates an

award of attorney's fees as a means of fulfilling Congress's intent that the Act

should be enforced by debtors acting as private attorneys general"). Fees are

mandatory even if there has been no award of actual or statutory damages. Emanuel

v. American Credit Exchange, 870 F.2d 805, 809 (2d Cir. 1989); Pipiles v.

Credit Bureau of Lockport, 886 F.2d 22, 28 (2d Cir. 1989).

> Civil suits will deter abusive practices only if it is economically feasible for
> consumers to bring them. Unless consumers can recover attorneys fees it
> may not be possible for them to pursue small claims ....
> [U]nscrupulous collection agencies have little to fear from such suits if
> consumers must pay thousands of dollars in attorney fees to protect
> hundreds. Congress recognized this problem and specifically provided
> for the award of attorney fees to successful plaintiffs.

Venes v. Professional Service Bureau, Inc., 353 N.W.2d 671 (Minn. App. 1984).

In Gradisher v. Check Enforcement Unit, 2003 U.S.Dist. LEXIS 753 (W.D.

Mich. 2003), the court awarded attorney fees of $69,872.00 where the plaintiff

recovered FDCPA statutory damages of only $1,000.00. In Armstrong v. Rose Law

Firm, P.A., 2002 WL 31050583 (D. Minn. Sep 05, 2002) the court awarded the full

lodestar fee request of over $43,000 at $250 per hour when the consumer received

the maximum FDCPA statutory damages of $1,000. In Sonmore v. Checkrite , Civil

No. CV-99-2039 DDA/FLN (D. Minn. Mar. 22, 2002) (copy attached) the court

awarded $82,000.00 in attorney's fees and $16,326.97 in costs in an FDCPA case

3

with $4,000.00 in statutory damages.

In <u>Perez v. Perkiss</u>, 742 F. Supp. 883 (D. Del. 1990), an FDCPA case, the court awarded over $10,000 in fees on a $1200 jury verdict, including 11 hours defending the fee petition. "[N]o matter how high the settlement offers urged by the *plaintiff* may have been, those offers were still for significantly less money than the total sum the plaintiff, as the prevailing party, is now entitled to recover." <u>Id.</u> at 890. <u>See also</u> <u>Norton v. Wilshire Credit Corp.</u>, 36 F. Supp. 2d 216 (D.N.J. 1999) (awarding over $57,000 in fees in an FDCPA case).

<u>The $300 Hourly Rate is Reasonable</u>

Counsel seeks fees at $300 per hour. Please see affidavit submitted herewith. That award is now well below current hourly market rates in Connecticut. Counsel's affidavit recites several cases, dating back to 1992, in which $250 has been awarded to others in this District. "Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." <u>Zagorski</u>, <u>supra</u>, citing <u>Tolentino</u>, 46 F.3d at 653.

In <u>Freer v. State Credit Adj. Bureau, Inc.</u>, Civil No. 3:97CV 1239 (GLG) (Doc. No. 71) (D. Conn Aug. 4, 2000), the court awarded $10,000 in fees on a $500 jury verdict. In <u>Freer</u>, fees were awarded on a quarter hour basis; $275 per hour was found reasonable; proportionality was rejected based on <u>LeBlanc-Sternberg v.</u>

Fletcher, 143 F.3d 748 (2d Cir. 1998); the time was generally not bifurcated between successful and unsuccessful claims. Some legitimate hours that the court deemed excessive were reduced. In Pabon v. Recko, Civil No. 3:OOCV380 (DJS) (TPS), the court awarded $23,445 for 78.15 hours at $300 per hour, likewise reducing excessive hours. Doc. No. 171.[1]

Lodestar Figure

Currently prevailing marketplace rates establish the lodestar amount. Missouri v. Jenkins by Agyei, 491 U.S. 274, 283 (1989); Blum v. Stenson, 465 U.S. 886, 895 (1983); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985) (rejecting 46 hours on pretrial memo and 42 hours on fee application); Cohen v. West Haven Bd. of Police Com'rs, 638 F.2d 496, 506 (2d Cir. 1980).

There is a strong presumption that the lodestar figure (reasonable hours times reasonable rate) represents a reasonable fee. Blanchard v. Bergeron, 103 L.Ed. 2d 67, 76 (1989), quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 656 (1986).

"The district court may not reduce the established market rate by some factor that it believes accounts for differences between large firms and small firms. Lawyers

---

[1] **Error! Main Document Only.**In re Raytech Corp., 241 B.R. 785, 789 (D. Conn. 1999) (court is to determine whether attorneys in the relevant market or community are customarily compensated by their clients at their full hourly rate for such travel time.); Crumbaker v. Merit Systems Protection Board, 781 F.2d 191, 193-94 (Fed. Cir. 1986) (reasonable travel time should be compensated at the same rate as other working time).

of common expertise and experience in the same market are entitled to the same rate." Bankston v. State of Illinois, 60 F.3d 1249, 1255-56 (7th Cir. 1995); Bailey v. District of Columbia, 839 F. Supp. 888, 891 (D.D.C. 1993) (no distinction between solo and large firm rate).

While the Court has discretion to determine the proper fee amount, "[T]he latitude of its discretion is narrowed by a presumption that successful civil rights litigants should recover reasonable attorney's fees unless special circumstances render such an award unjust. . . . Furthermore, where, as here, the party achieves success on the merits, an award of all reasonable hours at a reasonable hourly rate, i.e., the lodestar figure, is presumptively appropriate." DiFilippo, 759 F.2d at 234.

"[A] party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified." United States Football League v. National Football League, 887 F.2d 408, 413 (2d Cir. 1989), cert. denied, 493 U.S. 1071 (1990) (awarding $5,500,000 in fees on $3 recovery), cited in Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992). See Laura B. Bartell, Taxation of Costs and Awards of Expenses in Federal Court, 101 F.R.D. 553, 560-62 (1984).

Plaintiff submits that fee standards in civil rights cases are applicable here, because an important public policy was vindicated. See Delaware Valley, 478 U.S. at 559-60; Zagorski, supra; Tolentino, 46 F.3d at 652; Hollis v. Roberts, 984

F.2d 1159, 1161 (11th Cir. 1983) (FDCPA award $1,500; fees granted for 24.9 hours at $150/hr., prevailing rate in the community).

<u>No Adjustment Should Be Made</u>

The burden of proof is on the opponent to present specific evidence that a lower amount is appropriate. <u>E.g.</u>, <u>United States Football League v. National Football League</u>, 887 F.2d 408, 413 (2d Cir. 1989); <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (fee opponent must submit evidence); <u>Brinker v. Giuffrida</u>, 798 F.2d 661, 668 (3d Cir. 1986) ("[T]here is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant").

Plaintiff does not request an upward or downward adjustment. If a defendant requests such an adjustment, factors identified in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-719, may be considered. <u>Hensley</u>, 461 U.S. at 434 n.9 ("[M]any of those factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate"); <u>U.S. Football League</u>, 887 F. 2d at 415.

1. The time and labor required (see affidavit). Plaintiff submits that the time expended in the prosecution of this action is modest, especially compared with defense fees, due to counsel's experience in consumer protection litigation. In these cases, which are small monetarily but help others because defendant changes its forms and procedures, defendants should not be encouraged to expend resources

beyond the value of the case in the hope of reducing plaintiff's fee award.

2. The novelty and difficulty of the question. Even if the case had been straightforward, the lodestar amount may not be reduced. DiFilippo, 759 F.2d at 235.

3. The skill requisite to perform the legal services properly: plaintiff's counsel knows of very few attorneys who purport to be able to litigate plaintiffs' Consumer Credit Protection Act cases.

4. The preclusion of other employment. The time spent on this case was not, and could not be, spent at the same time on other cases.

5. The customary fee is what the plaintiff's counsel requests.

6. Whether the fee is fixed or contingent. In a Consumer Credit Protection Act case, the fee is always contingent -- not on the amount of damages, but on award by the court or agreement of opponent. In a private attorney general case, Congress encourages counsel to bring suit, recognizing that counsel cannot charge the client an hourly fee, because the fee may be out of proportion to the recovery.

If contingent, the fee award should compensate counsel for the risk of receiving no compensation, Blum, 465 U.S. at 903, and to permit counsel "to earn an income that would be competitive with colleagues who get paid win or lose." Bayless v. Irv Leopold Imports, Inc., 659 F. Supp. 942 (D. Ore. 1987) (odometer case).

7. Time limitations imposed by the client or the circumstances (none except reasonableness).

8. The amount involved and the results obtained. "[C]ourts generally will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases." Smith v. Chapman, 436 F. Supp. 58, 66 (W.D. Tex. 1977). Because the statute itself limits damages, the amount of damages awarded does not justify a reduction in the lodestar amount. Cowan v. Prudential Ins. Co., 935 F.2d 522, 527 (2d Cir. 1991).

The Second Circuit rejects the "proportionality" argument as the basis for a fee award. E.g., Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 234 (2d Cir. 1985); McCann v. Coughlin, 698 F.2d 112, 129 (2d Cir. 1983). Indeed, fee awards in civil rights and consumer protection matters regularly exceed the plaintiff's recovery. E.g., City of Riverside, 477 U.S. at 580 (awarding $245,450 fees on a $33,350 recovery, including 143 hours for trial preparation); Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992) (fee award of $500,000 on $60,000 settlement); United States Football League v. National Football League, 887 F.2d 408, 413-15 (2d Cir. 1989) ($5.5 million fee award on $3.00 recovery); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1057-60 (2d Cir. 1989) ($415,000 fee for recovering $2,689.02 monthly pension).

9

Norton v. Wilshire Credit Corp., 36 F. Supp. 2d at 220 (rejecting proportionality in awarding $58,000 in fees in an FDCPA case).

In a Consumer Credit Protection Act case such as this one, the award is often limited by statute. "There is little reason to look to the limited award of statutory damages to determine the reasonableness of attorneys' fees which are generated by the unlimited costs of litigation." Postow v. Oriental Bldg Ass'n, 455 F. Supp. 781, 791 (D.D.C. 1978). See also Bittner v. Tri-County Toyota, 569 N.E.2d 464. 466 (Ohio S.Ct. 1991) (the remedial/consumer protection purpose of the statute is undermined if relatively small dollar amount cases cannot fully compensate the attorneys who take them on).

9.  The experience, reputation and ability of the attorney. Plaintiff's counsel has a nationwide reputation in the consumer protection field.

10. The undesirability of the case (see affidavit as to risk of loss and dearth of practitioners in the area).

11.  The nature and length of the professional relationship with the client (representation limited to Consumer Credit Protection claims).

12.  Awards in similar cases. See discussion above and affidavit for the current market rate.

Purpose of fee award.

Attorneys fees are central to the enforcement of the Consumer Credit

10

Protection Act (of which the FDCPA is a part) by private attorneys general. "The value of an attorney's services is not only measured by the amount of the recovery to the plaintiff, but also the non-monetary benefit accruing to others, in this case the public at large from this successful vindication of a national policy to protect consumers from fraud in the used car business." Fleet Inv. Co. v. Rogers, 620 F.2d 792, 794 (10th Cir. 1980) (odometer law case).

Such fees are particularly important in consumer cases, under the principles discussed by the Supreme Court in Rivera, supra, a civil rights case. Consumer Credit Protection Act cases also support this proposition. See, e.g., Ratner v. Chemical Bank, 54 F.R.D. 412 (S.D.N.Y. 1972) ($20,000 fees, $100 damages). "[C]ourts generally will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases." Smith v. Chapman, 436 F. Supp. 58, 66 (W.D. Tex. 1977).

A defendant should not be encouraged to litigate in the expectation that the Court will reduce the plaintiff's fee request, even though the defendant's fees to its own attorney are not similarly scrutinized and reduced by the Court. Cf. Eddy v. Colonial Life Ins. Co., 59 F.3d 201, 207-08 (D.C. Cir. 1995) (a fee award deters noncompliance with the law and encourages settlement); Benavides v. Benavides, 11 Conn. App. 150 (1987) (same).

11

An inadequate award diminishes the inducement created by fee-shifting

statutes, and undermines the goal of promoting private representation in FDCPA

actions. In language which could appropriately be applied to FDCPA actions, the

Second Circuit noted:

> A plaintiff who is successful in establishing certain practices as violative of
> his constitutional rights will deter officials from continuing this conduct, and
> thereby help assure that others are not subjected to similar constitutional
> deprivations. This deterrent effect of successful §1983 actions is wholly
> independent of the relief which the plaintiff seeks or is ultimately awarded,
> and therefore it is inappropriate to condition attorney's fee awards on the
> nature of the relief granted.

McCann v. Coughlin, 698 F.2d 112, 129 (2d Cir. 1983).

An award should be made at a rate which recognizes the vindication of public

policy expressed in the FDCPA. "The award of attorney's fees, as a practical matter,

is a critical and integral part of [the creation of a system of private attorneys

general]." James v. Home Constr. Co., 689 F.2d 1357, 1359 (11th Cir. 1982).

Settlement efforts.

It is unquestionably in the best interests of the Court and the parties to settle

rather than litigate. See Janneh v. GAF Corp., 887 F.2d 432 (2d Cir. 1989). "In a

very real sense, all of the parties -- and the court as an institution -- win when

litigation is settled amicably short of trial." Mathewson Corp. v. Allied Marine Ind.,

Inc., 827 F.2d 850, 857 (1st Cir. 1987).

Defendants scorned plaintiff's persistent efforts at settlement of this matter in a disproportionate effort to avert exposure to limited damages. This Court can bolster such settlement efforts for the future by awarding the full amount requested.

## CONCLUSION

Defendants are violators of federal and state law. Plaintiff is the "chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority." This litigation accomplished the purposes of the FDCPA. Attorney's fees encourage defendants to comply with the FDCPA, as well as providing the consumer an incentive and the financial ability to bring FDCPA suits. Postow, 455 F. Supp. at 785, 786. Fees should be awarded as requested.

Plaintiff submits that the fee application is reasonable in time expended and amount requested. She respectfully submits that it should be awarded as requested.

THE PLAINTIFF


BY____/s/ Joanne S. Faulkner___
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395
j.faulkner@snet.net


13

04/11/02    13:50   FAX 612 342 2399                    1012 LAW FIRMS                                           ☒002
03/22/82 11:26  To:Michael G Phillips          From:U S District Court          612-664-2121        Page 2/7

1

2

### UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

3   Eric L. Sonmore and Jennifer M. Rodine,                              Civil No. 99-2039 DDA/FLN
    individually and on behalf of all others
4   similarly situated,

5                           Plaintiffs,

6   v.                                                          **ORDER ON PLAINTIFFS'**
                                                               **MOTION FOR ATTORNEYS' FEES**

7   CheckRite Recovery Services, Inc., a
    Georgia corporation, d/b/a/ CheckRite,
8   Jon R. Hawks, Ltd. a Minnesota corporation,
    and Jon R. Hawks, an individual.
9
                            Defendants.
10

11

12         Before the Court is the motion of the Plaintiffs Eric L. Sonmore (Sonmore) and Jennifer M.

13   Rodine (Rodine) for an award of attorneys' fees. The action was commenced on December 22, 1999,

14   by Plaintiff Sonmore against CheckRite Recovery Services, Inc. (CheckRite) and Jon R. Hawks, Ltd.,

15   a Minnesota corporation, and Jon R. Hawks, an individual (collectively Hawks). Counts III and IV of

16   the Complaint charged Hawks with violations of the Fair Debt Collection Act (FDCA). On October 25,

17   2000, the Court granted summary judgment in favor of Defendant Hawks on Count IV of the Complaint

18   and denied the summary judgment motion of Defendant Hawks on Count III of the Complaint. A Second

19   Amended Class Action Complaint was filed on January 8, 2001. The Amended Complaint added Rodine

20   as a named Plaintiff. It restated the original Count III as new Count IV in the Amended Complaint and

21   added a further claim against Hawks in a new count alleging a separate violation of the FDCA (Count

22   V). Both Plaintiffs entered into a settlement in principle with the Defendant CheckRite. The claims

23   against Defendant Hawks came before the Court on cross motions for summary judgment and Plaintiff's

24   motion for certification of a class. On August 6, 2001, the Court denied the motion for summary

25   judgment of Defendant Hawks and granted Plaintiffs' motion for summary judgment in favor of Sonmore

26   and Rodine on the issue of liability in Counts IV and V. On that same date, the Court denied the motion

27   of the Plaintiffs for certification of a class. On October 9, 2001, the parties filed a Stipulation for Entry

28

                                        FILED         **MAR 2 2 2002**
                                        RICHARD D. SLETTEN, CLERK
                                        JUDGMENT ENTD_____
                                        DEPUTY CLERK_____

04/11/02   13:50  FAX 612 342 2399          1012 LAW FIRMS                                      ☒003
03/22/02 11:26  To:Michael G Phillips      From:U S District Court      612-664-2121      Page 3/7

1  of Judgment in favor of each Plaintiff in the amount of $2,000.00 and judgment in accordance with the

2  stipulation was entered on October 24, 2001.

3      The FDCA provides for an award of reasonable attorneys' fees to a prevailing consumer.

4  Specifically, it provides for liability of a debt collector in an amount to include:

5          In the case of any successful action . . . the cost of the action, together
        with a reasonable attorneys' fees determined by the Court.

6

7  15 U.S.C. § 1692K(a)(3).

8      The parties do not dispute that Plaintiffs are each a "prevailing consumer." The dispute, simply

9  put, is over the amount, i.e. what is a reasonable fee under the circumstances of this action.

10      Plaintiffs seek $133,270.50 in fees and $15,292.90 in expenses for the firm of Beeler, Schad &

11  Diamond, P.C. and $40,940.00 in fees and $1,034.07 in expenses for attorney Michael Phillips or a total

12  of $174,210.50 in fees and $16,326.97 in expenses. Plaintiffs suggest that these figures do not include

13  briefing the class certification issue. Defendant Hawks requests the Court to limit the attorneys' fees to

14  no more than the amount awarded to the Plaintiffs, i.e. $4,000.00. Plaintiffs argue that the sizeable

15  amount of their fee request is the direct result of the conduct of Defendant Hawks in making the case "as

16  difficult as possible" for Plaintiffs to litigate and refusing "to agree to almost anything." Defendant

17  Hawks counters that the amount of fees sought are shockingly disproportionate to the amount of recovery

18  either available or ultimately obtained given the nature of the claims. The Court finds itself in agreement

19  with the assertions of both the Plaintiffs and Defendant Hawks.

20      The standards and criteria to be applied in judging a fee petition under fee shifting statutes are

21  familiar to the Court and to counsel, but they are easier in their recitation than in their application. The

22  Court must start by arriving at the familiar "lodestar" by evaluating the "number of hours reasonably

23  expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424,

24  433 (1983) The process of arriving at a reasonableness includes "the plaintiff's overall success; the

25  necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested;

26  and the efficiency with which the plaintiff's attorneys conducted that activity." *Jenkins by Jenkins v.*

27  *Missouri*, 127 F.3d 709, 718 (8th Cir. 1997). In assessing reasonableness, a district judge is instructed

28                                -2-

Case 3:02-cv-01069-WIG    Document 73-3    Filed 10/31/2005    Page 17 of 26

04/11/02    13:51    FAX 612 342 2399          1012 LAW FIRMS                                ☒004
03/22/02 11:26  To:Michael G Phillips        From:U S District Court      612-664-2121      Page 4/7

1  to "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours

2  reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.

3      The Court has carefully reviewed the submission of Plaintiffs' counsel, including the entries of

4  time and type of service rendered. Based upon that review, its extended knowledge of the case, and

5  having heard and determined all dispositive motions in the action, the Court makes the following findings

6  and conclusions:

7  **A.    Hourly Rates**

8      Plaintiffs' counsel seeks an hourly rate for attorneys in the Beeler firm of $360.00 per hour for

9  attorney James Shedden and $215.00 per hour for attorney Michael Hilicki. They seek an hourly rate of

10  $200.00 for services performed by attorney Michael Phillips. In support of these requests are recitations

11  of Shedden's and Hilicki's experience in FDCA litigation together with affidavits of Twin City

12  practitioners in this area of law who attest to the reasonableness of these rates. Defendant Hawks contests

13  the rates sought as being unreasonable but submits no contravening affidavits. The Court found Plaintiffs

14  counsel to be able practitioners, and particularly in the case of attorney Hilicki, found him to be

15  knowledgeable regarding the FDCA. The Court considers the hourly rates claimed to be generous, but

16  does not find them unreasonable and they will be accepted for purposes of arriving at the "lodestar."

17  **B.    Hours Reasonably Expended**

18      The first and most obvious inquiry into the reasonableness of counsel's claim is the necessity of

19  engaging the services of three attorneys in the handling of the case. In particular, attorney Shedden

20  claims 20 hours "conferring" with co-counsel. Much of the claim includes duplicated services occasioned

21  by the utilization of two, or in some instances, three attorneys engaged in the same undertakings. On

22  numerous occasions, two counsel made court appearances for oral argument on motions when one would

23  have clearly sufficed. The Court is of the opinion that the case was one that simply did not require the

24  services of two counsel experienced in FDCA law during every phase of its preparation and two counsel

25  at all court appearances.[1] As a consequence, the requested fee must be significantly reduced.

26  _____

27      [1] Compilations of these duplications are documented in Defendant's Memorandum of Law in
     Opposition to Plaintiffs' Motion for Attorneys' Fees and will not be repeated here.
28

-3-

1    In addition, the Court considers the totality of the charges for various categories of services in

2  excess of what would be reasonable and necessary for these tasks by counsel experienced in the field.

3    The submissions in support of the fee request recite that all fees attributable to the efforts to obtain

4  class certification have been redacted. No such disclaimer is made for fees attributable to the claims

5  against the co-defendant CheckRite. Certainly a portion of the fees itemized were related to the services

6  rendered with reference to the original co-defendant CheckRite and in bringing those claims to a

7  negotiated settlement. A reduction for that phase of the case is likewise appropriate.

8  **C.    Prevailing Party and Overall Success**

9    It is undisputed that Plaintiffs are prevailing consumers and as such entitled to a fee award.

10  However, the inquiry does not end there. Where a plaintiff achieves only limited or partial success, the

11  Court may consider "whether the expenditure of counsel's time was reasonable in relation to the success

12  achieved." *Wal-Mart Store, Inc. v. Barton*, 223 F.3d 770,772 (8th Cir. 2000). The Court must also

13  determine if there were claims upon which the Plaintiffs were unsuccessful.

14    Counsel for Plaintiffs have eliminated fees directly attributable to the motion for class

15  certification and then claimed total success on the substantive claims. In the Court's view, that does not

16  adequately describe the totality of the case. This action from the outset was directed toward the

17  certification of a class of some 20,000 members and the attendant fees that would accompany such a

18  result. Astute counsel would never undertake the time, money, and energy devoted to this case if the

19  ultimate and, indeed maximum goal, were the recovery of $4,000.00. The ultimate goal for which the

20  majority of delineated services were directed was clearly class certification and the efforts to achieve it

21  were unsuccessful. In the Court's view, the fee application does not properly and accurately reflect "the

22  relationship between the amount of the fee [requested] and the results obtained." *Hensley*, 461 U.S. at

23  437.

24  **D.    Proportionality**

25    Counsel for Plaintiffs insist that the "reasonableness of Plaintiffs' fees cannot be determined based

26  on so-called 'proportionality' to Plaintiffs' damage recovery" and cites cases in support of their position

27  in that regard. The Court cannot agree. Even when taking the "scorched earth" defense tactics of

28

-4-

1  Defendant Hawks into account, the Court is of the view that a fee request for $174,000.00 in a case
2  resulting from a $2.00 bad check with a maximum possible recovery and an ultimate recovery of
3  $4,000.00 is so grossly disproportionate as to call out for reduction. Certainly were it not for a fee
4  shifting statute, no reasonable client and surely no reasonable lawyer would undertake to seek recovery
5  of $4,000.00 at a fee for services rate of $360.00 per hour or even the lesser figure of $215.00 per hour.
6  The expenditure of services resulting in the fees here sought would be unthinkable for a case of this
7  magnitude were it not for the fee shifting option. A substantial reduction of the fees requested is required
8  in the Court's view in light of the nominal recovery available and obtained for the Plaintiffs of the case.
9  To hold otherwise would be sheer folly.

10  **E.    Conclusion**

11       The Court recognizes that there is no precise rule or formula for making fee determinations. They
12  are made in accordance with oft repeated standards, but in the final analysis must depend upon the
13  decision-maker's knowledge of the case, appreciation of its complexity, need for the services sought,
14  observance and knowledge of the abilities of counsel, the results obtained, and personal background and
15  experience. For the reasons set forth above, the Court is satisfied that a substantial reduction in the fee
16  petition as presented is required in this instance, and such a reduction will be made. In doing so, the
17  Court in no way intends to condone the manner of litigation engaged in by Defendant Hawks. Without
18  question, his refusal to accede to even the most simple request was a factor in increasing the time required
19  to bring the case to a successful conclusion. Even Hawks' obstreperous tactics, however, cannot
20  overcome the Court's conclusion that overall the fee request as submitted is substantially in excess of
21  "reasonable."

22       In the Court's opinion, taking into account the experience and abilities of counsel, the nature of
23  the case, the appropriate hourly rates, the time and effort reasonably necessary to pursue the claims, the
24  result available and obtained, the purpose underlying the award of attorneys' fees and for the reasons set
25  forth above, the Court finds a reasonable fee for counsel in this case to be as follows:

26             Beeler, Schad & Diamond, P.C.                    $60,000.00
27             Michael Phillips                                  22,000.00
28             **TOTAL ATTORNEYS' FEES**                         $82,000.00

-5-

1        In light of the Court's reduction of attorneys' fees from those sought in the fee petition, the Court

2   will allow litigation costs as submitted by counsel as follows:

3              Beeler, Schad & Diamond, P.C.           $15,292.90

4              Michael Phillips              1,034.07

5              **TOTAL COSTS**              **$16,326.97**

6       Upon the foregoing,

7        IT IS ORDERED that Plaintiffs Eric L. Sonmore and Jennifer M. Rodine have and recover of

8   the defendant Jon R. Hawks, Ltd. a Minnesota corporation and Jon R. Hawks, an individual, the sum of

9   $82,000.00 as and for attorneys' fees and $16,326.97 as and for costs of the action, or a total of

10   $98,326.97.

11   DATED: March **22** , 2002.

12

13

14                           DONALD D. ALSOP, Senior Judge

15                           United States District Court

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EVELINE GOINS

v.                                        CASE NO. 3:03CV 636 (JBA) (JGM)

JBC & ASSOCIATES, P.C. ET AL.                    April 2, 2005

FEE AFFIDAVIT

Joanne S. Faulkner states:

1. I am an attorney licensed to practice before the United States Supreme Court, the Second, Fifth, Sixth and Seventh Circuit Courts of Appeals, the United States District Courts for the District of Connecticut and the Southern and Eastern Districts of New York, and all Connecticut courts.

2. I represent the plaintiff and submit this affidavit in support of a request for attorneys fees. Blum v. Stenson, 465 U.S. 886 n.5 (1984).

3. I was admitted to practice in New York in 1963, and in Connecticut in 1967. From 1967 to 1985, I was a staff attorney with New Haven Legal Assistance Association, Inc., a nonprofit corporation. I am in private practice, restricted to consumer-related matters, preferably for persons who cannot afford to pay a lawyer.

4. I have been involved in groundbreaking nationally reported cases, including Heintz v. Jenkins, 514 U.S. 291 (1995); Connecticut v. Doehr, 501 U.S. 1 (1991); Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057 (9th Cir. 2002); Romea v. Heiberger & Assoc., 163 F.3d 111 (2d Cir. 1998); Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322 (7th Cir. 1997); Charles v. Lundgren & Associates, P.C., 119 F.3d 739 (9th

Cir. 1997); Newman v. Boehm, Pearlstein & Bright, Limited, 119 F.3d 477 (7th Cir.

1997); Poirier v. Alco Collections, Inc., 107 F.3d 347 (5th Cir. 1997); Avila v. Rubin, 84

F.3d 222 (7th Cir. 1996); Clomon v. Jackson, 988 F.2d 1314, 1321 (2d Cir. 1993).

5. I have had extensive experience for more than thirty five years in consumer
matters, including litigation, conducting seminars and writing articles. Even before Heintz
v. Jenkins, 514 U.S. 291 (1995), I had national renown for my expertise in consumer
cases. I am frequently consulted by consumer practitioners from all over the country.
In October, 2002, I received the prestigious Vern Countryman Award from the National
Consumer Law Center "for excellence and dedication in the practice of consumer law on
behalf of low-income consumers."

6. I am a past chair of the Consumer Law Section of the Connecticut Bar Association
and was the editor of its newsletter for over ten years until 1998. I was a member of the
Federal Reserve Board's Consumer Advisory Council. I was on the Board of Directors of
the National Consumer Law Center and am presently a trustee thereof. I am a
founding member of the National Association of Consumer Advocates, Inc.

7. I have lectured for the Connecticut Bar Association, the National Consumer
Law Center, the National Association of Consumer Advocates, the New Haven County Bar
Association, and other entities on consumer laws, and have published articles in those
fields. I am a contributing editor of the National Consumer Law Center's Truth in Lending
Manual, Automobile Fraud Manual, Credit Discrimination Manual, Fair Credit Reporting
Act Manual, Fair Debt Collection Manual, and supplements. I served the Connecticut
Law Revision Commission as a member of the Advisory Committee on UCC Article 2A,

2

and on a Consumer Leasing Committee.

8. My work in connection with these consolidated cases is shown on the schedules attached hereto. I prepared time records contemporaneously with performance of the work. The time records do not duplicate work performed in any other file; they do not include non-legal tasks such as filing or copying, minor calls such as regarding extensions of time, calls from or to client to report on progress. Where there is a plus sign, the time was substantially reduced as a matter of billing judgment. A significant amount of time dealing with defense counsel in emails and phone calls was omitted.

9. Less than a handful of Connecticut attorneys are willing to accept consumer cases because of the special expertise required and the risk of nonpayment.

10. I am requesting attorney's fees at the rate of $300 per hour. I believe that the award requested is reasonable, and is LESS THAN rates being charged by similarly experienced private counsel in the federal court. In Nelson, *supra*, the client paid for my services at $500 per hour. The $300 rate was awarded in Pabon v Recko, Civil No. 3:00CV 380 (DJS)(TPS) (D. Conn. Dec. 30, 2004) Doc. No. 171; Murphy v Kwiatek, Civil No. 3:03cv173 (MRK) (WIG) (D. Conn. Oct. 5, 2004) Doc. Nos. 15, 17; Harvey v. USCB, Inc., Civil No. 3:02CV1770 (DJS) (D. Conn. Jan. 31, 2003) ($300 per hour); Wrightington v. Nationwide Capital Recovery, Civil No. 3:02CV 1175 (JBA) (JGM) (D. Conn. Jan 6, 2003) ($300 per hour). See also Orchano v. Advanced Recovery, Inc. (1998) ($275 per hour); Nickerson v. J&P Credit Services, Civil No. 3:99CV1876 (DJS) (TPS) (D. Conn. Mar. 29, 2000) ($275 per hour granted as requested with finding that $275 "is substantially less than that normally commanded by Ms. Faulkner").

3

11. Hourly billing rates of Connecticut private counsel with which I am familiar are:

First quarter of 1995:

| Robert Allen | law degree 1973 | litigation, consumer 220 |
| John Droney | law degree 1973 | litigation | over 300 |

Third Quarter of 1997:

| Richard Beider | law degree 1965 | litigation | 350 |

Third quarter of 1998:

| David Faulkner | law degree 1964 | trusts & estates | 285 |

12. Jonathan Einhorn, a lawyer admitted in 1974, was awarded $250 per hour in Gyadu v. Giordano, Civil No. 3:94CV1144 (JBA), 3 Conn. Ops. 410 (D. Conn. March 14, 1997).

13. The Second Circuit commented favorably on my experience, reputation and ability, noting the "eight federal district court cases in Connecticut in 1993 and 1994 alone" in which Mrs. Faulkner had been awarded fees at $200 per hour. Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 100 (2d Cir. 1997).

15. Typical historical market rates in Connecticut are shown by older awards to other counsel in Lieberman v. Dudley, Civil No. 3:95CV2437 (AHN) (D. Conn. July 27, 1998) ($250/hr); Wallace v. Fox, Civil No. 3:96CV772 (D. Conn. May 11, 1998) (awarding blended rate of $345.57 per hour inclusive of a 1.5 multiplier to several counsel and paralegals in shareholder derivative action); Skubel v. Sullivan, 1998 WL 136176 at *3 (D. Conn. Mar. 11, 1998) ($250/hr); Calovine v. City of Bridgeport, Civil No. 3:94CV 379

4

(WWE) (D. Conn. Feb. 4, 1998) ($250/hr for a "relatively low number of hours billed:" 179.7 hours); CG v. New Haven Bd. of Education, 988 F. Supp. 60, 69 (D. Conn. 1997) ($250/hr); Mrs. B. v. Milford Bd. of Educ., Civil No. 3:93CV1723 (DJS) (TPS) (D. Conn. Nov. 4, 1997) ($250/hr consistent with prevailing rate in Connecticut); Evans v. State of Connecticut, 967 F. Supp. 673, 691 (D. Conn. 1997) (prevailing 1996 rate is $200 to $225; award at $200/hr despite some criticism of attorney's performance); Russo v. Coppola, Civil No. 3:93CV1734 (AHN) (D. Conn. Feb. 6, 1995) ($250/hr); Kintz v. City of New Haven, 1993 WL 276945 at *3 (D. Conn. June 18, 1993) ($250/hr), aff'd 29 F.3d 622 (2d Cir. 1994); Friends of Animals, Inc. v. Hirsch, Civil No. 3:90CV621 (WWE) (D. Conn. Jan. 20, 1993) ($250/hr); Gonzalez v. Town of Stratford, 830 F. Supp. 111, 113 (D. Conn. 1992) ($250/hr).

The foregoing is true and correct and is signed under the penalties of perjury on April 2, 2005

        __/s/ Joanne S. Faulkner___
          JOANNE S. FAULKNER

This is to certify that the foregoing and attached were mailed on April 2, 2005, postage prepaid, to:

Peter Reynolds
MacDermid, Reynolds & Glissman, P.C.
86 Farmington Ave
Hartford CT 06105

                       __/s/ Joanne S. Faulkner_____
                       Joanne S. Faulkner

Goins v. JBC + 3:03cv636 (JBA)

| Date | Description | Hours | Rate | Total |
|---|---|---|---|---|
| 04/05/03 | internet & Pacer search on JBC et al | 2.00 | $600.00 | $600.00 |
| 04/07/03 | review other files, Draft summons, compla | 2.25 | $675.00 | $1,275.00 |
| 04/14/03 | acknl, mail serv | 0.50 | $150.00 | $1,425.00 |
|  | offer setl $3,000 | 0.25 | $75.00 | $1,500.00 |
| 05/19/03 | to process server | 0.00 | $0.00 | $1,500.00 |
| 07/19/03 | default plead | 0.20 | $60.00 | $1,560.00 |
| 09/02/03 | discovery | 1.00 | $300.00 | $1,860.00 |
| 09/06/03 | offer setl | 0.10 | $30.00 | $1,890.00 |
| 10/02/03 | tel conference with court | 0.75 | $225.00 | $2,115.00 |
| 12/04/03 | settlement conf | 1.75 | $525.00 | $2,640.00 |
| 01/20/04 | Motion to compel | 0.50 | $150.00 | $2,790.00 |
| 01/29/04 | add'tl discovery | 0.30 | $90.00 | $2,880.00 |
| 02/12/04 | status conf | 2.00 | $600.00 | $3,480.00 |
| 02/13/04 | review discovery, email re resolution | 0.30 | $90.00 | $3,570.00 |
| 02/18/04 | M/Sanctions | 0.75 | $225.00 | $3,795.00 |
| 02/21/04 | response to Prod, Obj depo, M/Compel de | 1.75 | $525.00 | $4,320.00 |
| 02/26/04 | spreadsheet & sorts re checks  + | 1.00 | $300.00 | $4,620.00 |
| 03/04/04 | Opp Prot Order; Motion to compel Jan. dis | 0.75 | $225.00 | $4,845.00 |
| 03/15/04 | Begin draft M Sum Jdg | 5.00 | $1,500.00 | $6,345.00 |
|  | internet search state licensing compliance | 2.00 | $600.00 | $6,945.00 |
| 03/20/04 | continue draft SJ, Rule 56 Stmt | 6.00 | $1,800.00 | $8,745.00 |
| 03/22/04 | extensive revisons, add prior filed cases | 2.00 | $600.00 | $9,345.00 |
| 03/27/04 | finalize R 56 stmt | 2.00 | $600.00 | $9,945.00 |
| 06/24/04 | review opp SJ and discovery + | 3.50 | $1,050.00 | $10,995.00 |
|  | library to research Def's citations | 1.25 | $375.00 | $11,370.00 |
| 06/25/04 | draft opp M Strike | 2.00 | $600.00 | $11,970.00 |
|  | begin draft rply brief | 4.20 | $1,260.00 | $13,230.00 |
| 06/30/04 | edit rply brf | 1.00 | $300.00 | $13,530.00 |
| 07/03/04 | begin review files for depo | 1.80 | $540.00 | $14,070.00 |
| 07/05/04 | finish review files, decide on Ex, outline qu | 3.50 | $1,050.00 | $15,120.00 |
| 07/06/04 | depo, travel, meal | 10.75 | $3,225.00 | $18,345.00 |
| 07/10/04 | draft M/strike, revise rply brf, revise opp st | 7.60 | $2,280.00 | $20,625.00 |
| 07/12/04 | finalize 3 filings | 1.00 | $300.00 | $20,925.00 |
| 01/22/05 | check fee records, offer setl | 0.4 | $120.00 | $21,045.00 |
| 01/17/05 | draft voir dire | 0.4 | $120.00 | $21,165.00 |
| 02/17/05 | review file for triable issues | 1.25 | $375.00 | $21,540.00 |
| 02/25/05 | conf court, JE Es | 0.3 | $90.00 | $21,630.00 |
| 02/28/05 | tel conf PR re ext, setl | 0.27 | $81.00 | $21,711.00 |
|  | tel conf PR re setl | 0.2 | $60.00 | $21,771.00 |
|  | tel conf PR re setl & call chambers | 0.25 | $75.00 | $21,846.00 |
| 03/16/05 | discussion PR re setl | 0.5 | $150.00 | $21,996.00 |
| 03/25/05 | PR offers another $15k (all 3 cases) count | 0.5 | $150.00 | $22,146.00 |
| 03/26/05 | review time records, accuracy, bill jdg | 1.00 | $300.00 | $22,446.00 |
| 04/02/05 | rply spt fee disclosure | 0.25 | $75.00 | $22,521.00 |
|  | fee brief & aff | 2.00 | $600.00 | $23,121.00 |
|  | est additional time, setl conf, rply | 7.00 | $2,100.00 | $25,221.00 |
|  |  |  | $0.00 | $25,221.00 |
|  | numerous phone calls & emails not includ |  | $0.00 | $25,221.00 |