**LAW OFFICES OF DAVID J. FINKLER**, **P.C.**
Attorneys and Counselors at Law

E-Mail: LawDJF@superlink.net

| | |
|---|---|
| Reply to: ☐<br>New Jersey Office:<br>266 Harristown Road<br>Glen Rock, N.J. 07452<br>(201) 689-0001<br>Fax (201) 689-1311 | Reply to: ☐<br>New York Office:<br>9 East 38th Street<br>Third Floor<br>New York, N.Y. 10016<br>(212) 675-3520<br>Fax (212) 448-9943 |

October 26, 2006

Hon. William I. Garfinkel
United States Magistrate Judge
915 Lafayette Blvd.
Bridgeport, CT. 06604

RE: GOINS v. JBC ASSOCIATES, P.C.
Case No. 3:02CV1069 (wg)

Dear Judge Garfinkel:

As directed, please find enclosed a memorandum of law which is submitted on behalf of the non-party Defendant, Western Union Financial Services, Inc. in this matter. A copy of the same has been e-mailed this date to opposing counsel, Ms. Faulkner.

Should there be any questions, kindly feel free to contact me.

Very truly yours,


David J. Finkler
Encl.
cc:   Ms. Joanne Faulkner, Esq.
       123 Avon Street
       New Haven, CT. 06511

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EVELYN GOINS,
           Plaintiff,

-vs.-                                              Civ. No. 3:02CV1069(wig)

JBC & ASSOC., P.C., ET. AL.,

           Defendant.
                                              October 25, 2006

**MEMORANDUM OF LAW IN SUPPORT OF THE
NON-PARTY, WESTERN UNION'S, OBJECTION TO
PLAINTIFF'S TURNOVER MOTION**

                              **LAW OFFICES OF DAVID J. FINKLER, P.C.
                              266 Harristown Road, Suite 203
                              Glen Rock, N.J. 07452
                              (201) 689-0001
                              Counsel to Western Union Financial Services, Inc.
                              David J. Finkler, Esq. on brief**

## STATEMENT OF FACTS

The subject matter was brought before this Court as a result of Plaintiff's turnover motion filed in June of 2006. The motion was opposed by Western Union Financial Services, Inc. (hereinafter referred to as "Western Union") by filing of an objection in July of 2006 which denied possession of any property of the judgment debtor. A hearing on the motion was held before this Honorable Court on October 12, 2006. Western Union produced a witness in support of its objection at the scheduled hearing while Plaintiff waived such right by failing to produce any witnesses in support of its turnover motion.

The genesis of the motion for turnover of assets allegedly held by Western Union, a non-party to this litigation, was a judgment obtained by Plaintiff against the Defendants in the sum of $16,674.00 in the State of Connecticut. The Defendant, JBC & Associates is, according to information provided by the Plaintiff's counsel, a "notorious debt collector". It is believed that the judgment was based upon a violation of the federal Fair Debt Collection Practices Act.

On May 10, 2006 Western Union received a writ of execution from the State Marshal of Connecticut, Nancy Marino. The notice sought turnover of unspecified property allegedly belonging to the defendant JBC & Associates. Western Union responded that it did not possess any funds belonging to JBC & Associates.

At the hearing of this matter, pursuant to Conn. Stat. sec. 52-356c, Western

Union's witness testified that Western Union is in the business of transferring money for consumers. The witness stated that Western Union transfers money according to its consumer customers' instructions to their designated recipients (such as defendant JBC). These consumer customers pay over to Western Union, from their funds, a fee plus the amount of money they desire to wire transfer. A Western Union agent receives the funds in trust and then deposits them into a designated Western Union bank account for next day wire to the account designated by the Western Union consumer customer. As the witness testified, upon receipt Western Union does not claim an ownership interest in the funds to be wired. Rather the funds remain the property of the consumer customer until they are wired into the designated bank account of the receiver. The relationship between Western Union and the consumer customer is based upon the language of the "Quick Collect" Agreement. This "Quick Collect" Agreement was produced and admitted into evidence as documentary proof that Western Union, in its usual course of business, contractually received funds from consumers which they (the consumer) direct to be paid to Western Union clients, such as Defendant, JBC & Associates. (See, Exhibit "E" in evidence). That document, which was not contradicted by the Plaintiff, clearly states the rights and obligations that exist between Western Union and its consumer customers. More specifically, the said "Quick Collect" form of agreement states without ambiguity the following dispositive language:

-2-

> **THE QUICK COLLECT SERVICE**
> **A Quick Collect or International Quick Collect Customer may send a payment to a Western Union Quick Collect Client (i.e. the receiver of your payment) from any one of Western Union's thousands of agent locations nationwide (the "Service")…**
>
> **REFUNDS**
> **You may cancel your Service transaction upon written request if the Client has not yet received the payment. All refunds shall be made within 30 days of receiving valid written request…**

Based upon this clear language, it is without dispute that Western Union at all times holds the property of its consumer customer in its possession up to such time as the funds in question are actually deposited into the bank account of the Quick Collect client, in this case defendant, JBC & Associates.

Plaintiff offered no testimony or evidence to contradict these facts and, as such, the same must be deemed true.

## POINT ONE

**CONNECTICUT LAW DOES NOT PERMIT A JUDGMENT CREDITOR TO SEIZE FROM THIRD-PARTIES PROPERTY NOT BELONGING TO A JUDGMENT DEBTOR**

Notwithstanding the uncontroverted testimony on behalf of Western Union, the Plaintiff would have this Court order Western Union to turnover funds that were in its possession but that did not belong to defendant, JBC & Associates. It is a well

held rule in the State of Connecticut that an attaching creditor is entitled only to the property of its debtor. In this vein the Court held in <u>Ciezynski v. New Britain Transp. Co.,</u> 121 Conn. 36, 182 A. 661, 663 (1936):

> **In the absence of fraud, an attaching creditor takes only such title as the debtor had at the time, unless he has been misled by an apparent ownership of the property attached of the debtor, and has given credit on the faith of such ownership, or we may add, unless he has some other superior equity. <u>Waterman v. Buckingham</u>, 79 Conn. 286, 64 A. 212; <u>Shaw v. Jackson</u>, 92 Conn. 345, 102 A. 736; <u>Fosdick v. Roberson</u>, 91 Conn. 571, 100 A. 1059.**

Furthermore, according to Conn. Stat. sec. 52-356a, the scope of a judgment creditor execution is limited to "the nonexempt personal property of the judgment debtor." This point is supported by the very Instructions for Writ of Execution served upon Western Union by the State Marshal (See, Exhibit "A" in evidence), which state:

> **PERSON IN POSSESSION OF PROPERTY OF JUDGMENT DEBTOR WHO IS NOT A NATURAL PERSON – Pursuant to Conn. Gen. Stat. 52-356a, you are required to deliver to the marshal, <u>property in your possession owned by the judgment debtor…</u>**

The Plaintiff herein has failed to prove to any extent that the property held by Western Union after May 10, 2006 (See, Exhibit "D" in evidence) was "property of the judgment debtor". As such, there is no legal basis upon which to order a turnover of the funds in question. An execution transfers to the Judgment Creditor only "whatever right,

-4-

title and interest the judgment debtor may have in the property." See, Staub v. Anderson, 151 Conn 384, 386, 198 A2d. 207 (1964).  Since the Judgment Debtor JBC never acquired any rights in the relevant property while in Western Union's control; Western Union never possessed any property to which the Plaintiff could claim a cognizable right.

Moreover assuming, arguendo, that the funds in Western Union's possession were no longer the property of the consumer customer when placed in Western Union's control, the Plaintiff still has failed to establish that those funds become the "property" of JBC.  More particularly, since the Judgment Debtor is a debt collector it is arguable that the property being sought from Western Union is, in effect, the property of the client of JBC for whom it was performing debt collection work.  See, e.g. Hospital of St. Raphael v. New Haven Savings Bank, 205 Conn. 694, 534 A2d. 1189 (1987).

On the basis of these arguments, it is respectfully requested that the Court deny the Plaintiff's motion.

### POINT TWO

### PLAINTIFF HAS FAILED TO ESTABLISH TO THIS COURT A TRUE NEED FOR THE TURNOVER ORDER WHICH WILL, IF EFFECTUATED, PLACE WESTERN UNION IN A POSITION OF FINANCIAL PERIL

At the hearing of this matter, Plaintiff failed to provide the Court with any evidence of a "true need" for the relief requested in the turnover motion.  In fact,

Plaintiff declined the offer of the Court to entertain witnesses to testify in support for the Plaintiff's turnover motion. As such, it is submitted, Plaintiff has waived her right. Moreover, the absence of any testimony or evidence in support for the turnover motion made the admission by Plaintiff's counsel to the Court that Plaintiff had received relevant information from Western Union as to the JBC bank account, bank location and account number into which Western Union deposited its consumer customer's funds all the more relevant and significant. Plaintiff offered no testimony as to any efforts which Plaintiff has made to levy upon this bank account for satisfaction of the judgment nor any other efforts taken to obtain satisfaction of the judgment from any other valid source. According to Conn. Stat. sec. 52-356b the Plaintiff creditor must make a "showing of need for the order." No such showing was made by Plaintiff.

     In an unpublished opinion, <u>Burlington v. Perlow</u>, 2006 WL 1075179 (Conn. Super, April 7, 2006), a copy of which is annexed hereto; the Court denied Plaintiff a turnover order where there was no proof of "need". Moreover, the Court therein considered as improper a garnishment demand by the Plaintiff for assets due in the <u>future</u> to the garnishee of the judgment debtor. Specifically, the Court stated at page 3:

> **In this case, the plaintiff seeks a turnover order of all periodic rental payments owed to the defendant "as required to satisfy the plaintiff's judgment in this action."…The Court interprets this to mean that plaintiff seeks an order to turnover all periodic rental payments owed at this time, as well as in the future…**

> **Moreover, the order sought by the plaintiff is for both current and future rental payments, not yet owed to defendant, and may be overly broad…**

This is the exact concern raised by Western Union in this matter. The funds sought to be taken from Western Union are not, contractually, the property of the Judgment Debtor herein until such time as they reach the possession of the Judgment Debtor's bank account in the future. At any time before that moment the consumer customer may cancel the transaction and receive its money back from Western Union.

Until such funds become the property of the judgment debtor, therefore, the relief sought by the Plaintiff is premature, overbroad and places Western Union at financial risk. Ostensibly, Western Union could be in possession of money which consumer customer "X" has designated for payment of a delinquent telephone bill through debt collector JBC. Assuming Western Union pays over "X's" funds to the judgment creditor and thereafter (AT <u>ANY FUTURE DATE</u> SINCE THE FUNDS TRANSFER WILL NEVER BE MADE TO THE DESIGNATED RECIPIENT PURSUANT TO THE "QUICK COLLECT" AGREEMENT - Exhibit "E" ) receives a demand from consumer customer "X"to cancel the transaction, Western Union will by its contract be compelled to return "X's" funds to "X". Thus, Western Union will in actuality have satisfied the judgment creditor from its <u>own</u> funds, not those of the judgment debtor, JBC.

-7-

An excellent case in point in this regard is <u>Hospital of St. Raphael v. New Haven Savings Bank</u>, 205 Conn. 604, 534 A2d. 1189 (1987).  Therein, the Connecticut Supreme Court considered the situation where a defendant obtained from its bank a teller's check for all of the funds contained in the defendant's bank account a day before an order for garnishment was served upon the bank.  The check had not yet been cashed when the garnishment notice was received and Plaintiff raised the argument that the bank could have placed a stop payment on the check and paid over the funds to the Plaintiff.  The Court rejected the argument and reversed the lower court decision finding that to effectuate the relief sought by the Plaintiff would subject the bank to possible personal financial liability.  The Court stated at page 611 as follows:

> **At the outset, it is important to note that the defendant, as issuer of the teller's checks, incurred direct liability for their payment.  As in the case of a certified check or a cashier's check, a teller's check engages the bank's own credit and is therefore more of a substitute for cash than is an ordinary personal check.  Although the defendant as the "customer" for whose account the checks were payable, could itself have asked its drawee, the Union Trust Company, to stop payment, on the teller's check…such a request would have left the defendant, as drawer, liable for breach of its engagement as drawer.**

Based upon this reasoning the Court concluded at page 614 that "**The defendant could not itself have requested that payment be stopped without exposing itself to liability to Rodriguez or to the bank that ultimately cashed the checks for her.**"

It is without any reasonable contradiction that the same is true for Western Union. Certainly, Western Union could have simply paid over the funds in its possession to the Plaintiff herein to satisfy the Plaintiff's demand. Such an act, however, would have left Western Union exposed to liability to its consumer customer if, for example, JBC or its customer (the actual provider of services for which the consumer was sending the money to pay the delinquent bill in the first instance), failed to credit the consumer's account for payment.

## POINT THREE

### PLAINTIFF HAS FAILED TO PROVIDE THE COURT WITH ANY EVIDENCE OF TITLE TO THE PROPERTY IN QUESTION BY JBC OR THAT A DEBT IS OWED TO THE JUDGMENT DEBTOR THAT OUGHT TO BE LEVIED

According to Conn. Gen. Stat. section 52-356b (a), the Court may order the transfer of specific property by a third party to a judgment creditor only where the judgment creditor proves that the third-party is in:

> "**(1) Possession of <u>specified personal property</u> that is sought to be levied on or**
> **(2) possession of documentary evidence of title to property of, or a debt owed to, the judgment debtor that is sought to be levied on.**"

Here, the execution in question did not seek any particular "personal property" owned by the judgment debtor nor has Plaintiff provided any proof to the Court that any specific "property" sought actually legally belongs to the judgment debtor. Given the business

-9-

that the judgment debtor is engaged in it is possible that all of the funds in question belong, when received by JBC, to its customer (ie: a telephone company, cable company, etc.). JBC may very well be paid by its customer separate and apart from the funds received by JBC.

As the Court cautioned in Caruso v. Perlow, Id at page 3, an unfettered turnover of assets motion may result in "substantial, irreparable and unjustifiable harm". In this case to the non-debtor, Western Union OR the consumer customer whose funds may never reach the party to whom he/she actually owes the debt.

### POINT FOUR

### RECENTLY, THE STATE COURT OF GEORGIA, GWINNETT COUNTY, DENIED A JUDGMENT CREDITOR THE RIGHT TO GARNISH WESTERN UNION "QUICK COLLECT" FUNDS

On facts extremely similar to those at bar, the State Court of Gwinnett County, Georgia, denied an attempt by a judgment creditor of a debt collector to garnish funds earmarked by consumers to pay debts through the Western Union "Quick Collect" service. Annexed hereto is a copy of the "Order Denying Traverse, Order Dismissing Garnishment Action" which is a public record on file with the Clerk of the Court in Georgia and to which it is requested that this Court take Judicial Notice.

If the Court so desires, Western Union will file a copy of the memorandum of law filed with the Court in that case.

-10-

Nevertheless, the decision in Georgia was that the money in the possession of Western Union was not property of the debtor subject to garnishment. It is respectfully submitted that such a finding is appropriate in this case as well.

## CONCLUSION

For all of the foregoing reasons, along with the record from the evidentiary hearing and Western Union's subsequent submissions as per Court Order, Western Union requests that the Court deny Plaintiff's motion for a turnover of funds from Western Union and direct that the garnishment be deemed void.

Respectfully submitted this 25th day of October, 2006.

                                                   _s/ David J. Finkler_____
                                                 David J. Finkler, Esq.(df9320)
                                                 Attorney for Western Union FSI